

DA 11-0149

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 50

STATE OF MONTANA,

Plaintiff and Appellee,

v.

LIONEL SCOTT ELLISON,

Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 10-281
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Lionel Scott Ellison (self-represented litigant); Billings, Montana

For Appellee:

Steve Bullock, Montana Attorney General; Sheri K. Sprigg,
Assistant Attorney General, Helena, Montana

Scott Twito, Yellowstone County Attorney, Julie Mees,
Deputy County Attorney, Billings, Montana

Submitted on Briefs:   January 11, 2012

Decided:   March 6, 2012

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Lionel Ellison (Ellison) was convicted in Yellowstone County Justice Court of misdemeanor Partner or Family Member Assault (PFMA) pursuant to § 45-5-206, MCA. He appealed the conviction to the District Court of the Thirteenth Judicial District, Yellowstone County. Ellison now appeals from an order from the District Court, denying his motion to supplement the record and denying his issues on appeal. We affirm.

¶2     Ellison claims that the District Court erred when it declined to consider on appeal evidence that he alleges was withheld by the prosecution in violation of his due process rights according to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), and § 46-15-322, MCA. We state the dispositive issue as follows:

¶3     *Did the District Court err in denying Ellison's motions, which were based upon the State's alleged withholding of exculpatory information, in violation of his right to due process?*

FACTUAL AND PROCEDURAL BACKGROUND

¶4     Ellison and his wife, Rhonda, were arguing near the front door of their home on September 19, 2009, when Ellison grabbed her by the arms, put his foot behind her leg, and pushed her into a post supporting the handrail. She called 911 shortly thereafter, and a Montana Highway Patrol trooper responded. Observing a fresh minor injury to Rhonda's arm, the trooper concluded there was probable cause to arrest Ellison. A second trooper arrived and took Rhonda's statement, along with photographs of her injury and the handrail post.

2

¶5    Ellison denied having any physical contact with Rhonda during the argument, and testified that he had been working on a horse pen when a tool jumped and possibly struck Rhonda's arm.   He claimed that it was not until later in the day that the trooper unexpectedly arrived and he was arrested.

¶6    A week after Ellison's arrest, Rhonda filed a petition for an order of protection. While both the PFMA charge and the order of protection petition were pending, Ellison was separately charged with witness tampering.   In investigating this latter case, law enforcement collected two pieces of evidence that constitute the basis for the alleged *Brady* violations.   The first piece of evidence is the transcript of an undated interview of Rhonda by a police detective, where she states that, on the day of the PFMA incident, she had ingested a Lexipro antidepressant, cough medicine, energy drinks, and some diet pills.   She stated that this cocktail made her "really jittery" and gave her the "shakes."   In this interview she also states, "I thought that they should be aware of that because Lionel also felt that they should be aware of that."   The second piece of evidence that Ellison claims was withheld are text messages found on his cell phone, which was seized in the witness tampering investigation two months after the PFMA incident.   The messages, which Ellison claims were from Rhonda, were received from the address "anonymous@textem.net," and read as follows:

> Oct. 4, 2009: "I L Y 4vr 2.  scared of you tho."
> Oct. 5, 2009: "do you want me dead?"
> Oct. 6, 2009: "psswrd 4 ur mail is sillybear"
> Oct. 6, 2009: "all ur passwords are sillybear Crgslist + email"
> Oct. 6, 2009: "Honey I went 2 C attny 2 day told em truth Manic attack like AK I know you not hurt only tryn 2 protect ILY PLEASE forgive PLEASEEE!!! ILY"

3

¶7 Both of these pieces of evidence were provided to Ellison's attorney in the witness tampering case approximately one month before the PFMA trial. However, Ellison's District Court appeal counsel asserted that the evidence should have been provided to the attorneys in both cases.

## STANDARDS OF REVIEW

¶8 Upon Ellison's appeal from Justice Court, the District Court functioned effectively as an intermediate appellate court. *See* §§ 3-5-303 and 3-10-115, MCA. We review the case as if the appeal originally had been filed in this Court. *Stanley v. Lemire*, 2006 MT 304, ¶ 26, 334 Mont. 489, 148 P.3d 643. We examine the record independently of the district court's decision, reviewing the trial court's findings of fact under the clearly erroneous standard, its discretionary rulings for abuse of discretion, and its legal conclusions and mixed questions of law and fact under the de novo standard. *Stanley*, ¶ 26. We will affirm the district court when it reaches the right result, even if it reaches the right result for the wrong reason. *City of Billings v. Staebler*, 2011 MT 254, ¶ 9, 362 Mont. 231, 262 P.3d 1101.

## DISCUSSION

¶9 In this case, the District Court found that it lacked subject matter jurisdiction to provide a ruling on the claims alleged by Ellison because the scope of the court's appellate review was limited to the record from the Justice Court. Ellison argues that § 46-20-701(2)(b), MCA (commonly referred to as the plain error rule), constitutes a statutory exception that should have allowed the District Court to consider his new

4

evidence. The State argues that § 46-20-701(2)(b), MCA, simply constitutes an exception to the rule that failure to make a timely objection constitutes waiver, but that it does not excuse the need for a record with which to conduct appellate review.

¶10    A district court's power to review justice court decisions is provided by Montana law, reading in pertinent part:

> (1) A party may appeal to district court a judgment or order from a justice's court of record. The appeal is confined to review of the record and questions of law, subject to the supreme court's rulemaking and supervisory authority.
>
> .   .   .
>
> (3)  The district court may affirm, reverse, or amend any appealed order or judgment and may direct the proper order or judgment to be entered or direct that a new trial or further proceeding be had in the court from which the appeal was taken.

Section 3-10-115(1), (3), MCA.   Accordingly, "[w]hen a District Court exercises its power of appellate review, it must refrain from deciding issues not properly raised or objected to in the court below."   *City of Missoula v. Robertson*, 2000 MT 52, ¶ 26, 298 Mont. 419, 998 P.2d 144; *see also State v. Mix*, 239 Mont. 351, 361, 781 P.2d 751, 757 (1989) ("We have long held to the principle that an appellate court in reaching its decision will only consider material ascertainable from the record.").

¶11    On the other hand, § 46-20-701(2), MCA, which provides for statutory plain error review, governs claims that arise on appeal due to suppression of evidence and newly discovered facts or rights.  *City of Missoula*, ¶ 26; *see also State v. Finley*, 276 Mont. 126, 915 P.2d 208 (1996), *overruled in part on other grounds by State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817.  The statute reads in relevant part:

5

(2) Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. A claim alleging an error affecting jurisdictional or constitutional rights may not be noticed on appeal if the alleged error was not objected to as provided in 46-20-104, unless the convicted person establishes that the error was prejudicial as to the convicted person's guilt or punishment and that:

. . .

(b) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the convicted person or the convicted person's attorney that prevented the claim from being raised and disposed of[.]

Section 46-20-701(2)(b), MCA.

¶12　This Court has adopted the rationale in *Brady v. Maryland* and cases therein, and we have previously reviewed *Brady* claims not contained within the record below under the plain error authority of § 46-20-701(2)(b), MCA. *See e.g. State v. Arlington*, 265 Mont. 127, 151-152, 875 P.2d 307, 321-322 (1994). Obviously, a defendant alleging that the prosecution withheld exculpatory information in violation of *Brady* would be unable to object at trial if he was unaware that the information had not been disclosed. In this case, the District Court had two options. First, the District Court could have reviewed Ellison's *Brady* claims on their merits pursuant to § 46-20-701(2)(b), MCA. Second, § 3-10-115(3), MCA, allows a district court to "direct that a new trial or further proceeding be had in the court from which the appeal was taken." In this instance, the District Court could have ordered the Justice Court to conduct a hearing on the allegation. We hold that it was error for the District Court not to exercise one of the above options.

¶13　The State contends that Ellison should have either moved for a new trial at the justice court level, or sought post conviction relief. While the prior option was viable

6

given the circumstances, the latter imposes several impediments. First, § 46-21-101(2), MCA, provides that "[i]f the sentence was imposed by a justice's, municipal, or city court, the petition may not be filed unless the petitioner has exhausted all appeal remedies provided by law." Thus, having either missed or declined his opportunity to move for a new trial at Justice Court, Ellison was required to appeal to the District Court as he did. He would then be entitled to petition for postconviction relief, but face the additional pitfall of no guarantee to appointed counsel. *See* § 46-8-104, MCA.

¶14 As noted above, the District Court should have reviewed Ellison's *Brady* claim pursuant to § 46-20-701(2)(b), MCA. However, because we review appeals from the district court acting in an appellate capacity de novo, we will consider Ellison's claim on its merits.

¶15 Under *Brady*, the State must disclose any evidence that is material to a defendant's guilt or punishment. *State v. Field*, 2005 MT 181, ¶ 22, 328 Mont. 26, 116 P.3d 813; § 46-15-322(1)(e), MCA. The prosecutor also has a continuing duty to promptly disclose any additional, discoverable evidence pursuant to § 46-15-327, MCA. The State's failure to properly release exculpatory, material evidence to a defendant is a violation of the defendant's Fourteenth Amendment guarantee of due process, regardless of the prosecutor's good faith. *State v. Hatfield*, 269 Mont. 307, 311, 888 P.2d 899, 901-902 (1995) (citing *Brady*, 373 U.S. at 87, 83 S. Ct. at 1196-1197).

¶16 "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently;

7

and prejudice must have ensued." *State v. St. Dennis*, 2010 MT 229, ¶ 47, 358 Mont. 88, 244 P.3d 292. In this case, Ellison fails to establish a prima facie *Brady* violation.

¶17 The evidence that provides the basis for Ellison's *Brady* claim is arguably favorable to his case. However, Ellison has not established that his defense was prejudiced under these facts.

¶18 Ellison was aware of this information before he went to trial. The State did not suppress the evidence. The evidence was produced to Ellison's counsel in the witness tampering case because it was collected in connection with the investigation of that charge. Significantly, the text messages that Ellison claims were suppressed by the prosecution were received on Ellison's own phone well before the device was seized. Moreover, as Rhonda noted during the interview with the police detective, she was there at the behest of Ellison who thought that law enforcement should know about her nervous condition on the day of the incident. Finally, he claims the information that explains Rhonda's "mental and physical state at the pertinent time of the alleged offense" and the text messages constitute material that he could have used to impeach her as a witness at trial. However, a review of the record indicates that defense counsel not only elicited extensive testimony from Rhonda regarding her medications and mental health at the time of the incident, but that multiple witnesses testified as to Rhonda's inconsistent stories regarding the incident. Moreover, nothing precluded the defense from using the text messages for impeachment purposes.

¶19 Ellison claims that he was entitled to assume that the State would produce this evidence. To the contrary, "[t]here is no *Brady* violation when the accused or his counsel

knows before trial about the allegedly exculpatory information and makes no effort to obtain its production." *St. Dennis*, ¶ 51 (quoting *U.S. v. Valera*, 845 F.2d 923, 927-928 (11th Cir. 1988)). Moreover, evidence is only material within the meaning of *Brady* "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Smith v. Cain*, ___ U.S. ___, 132 S. Ct. 627, 630, 2012 U.S. LEXIS 576 at *5 (January 10, 2012). We are not persuaded that any of the evidence in question would have produced a different result in this case. The court was presented with ample evidence of Ellison's guilt of PFMA at the bench trial, and the disputed evidence is not material within the meaning of *Brady* and its Montana progeny.

¶20 As noted above, we will affirm a district court when it reaches the right result, even if it reaches such a result for the wrong reasons. The District Court dismissed Ellison's *Brady* claims because it found that they were not ripe for appellate review. While we disagree with the District Court's reasoning, we agree with the ultimate conclusion.

CONCLUSION

¶21 For the foregoing reasons, Ellison's conviction is affirmed.

/S/ MIKE McGRATH

We concur:

/S/ BETH BAKER
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS