

DA 12-0095

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 235

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

THOMAS D. GAI,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 11-117
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          Calvin J. Stacey, Bryan M. Kautz; Stacey & Funyak; Billings, Montana

       For Appellee:

          Steve Bullock, Montana Attorney General; Jonathan M. Krauss, Assistant
Attorney General; Helena, Montana

          Kent Sipe, Special Deputy Yellowstone County Attorney; Roundup,
Montana

Submitted on Briefs:  August 15, 2012

Decided:  October 23, 2012

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Thomas D. Gai (Gai) appeals from the order of the Thirteenth Judicial District Court affirming his justice court conviction for DUI per se. We affirm and address the issues:

¶2     *1. Did the District Court err by affirming Gai's conviction based upon an incorrect application of Montana Rule of Evidence 803(6)?*

¶3     *2. Did the District Court err in concluding that there was sufficient evidence to support Gai's conviction?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     On August 8, 2010, Trooper Mark Tome (Tome) of the Montana Highway Patrol was dispatched to single-car crash on the western outskirts of Billings. Upon his arrival, Tome observed a pickup in an irrigation ditch and Gai standing nearby in a private driveway. Gai told Tome he had probably fallen asleep behind the wheel. Tome noticed an odor of an alcoholic beverage on Gai's breath and that his eyes were bloodshot and glassy. When asked, Gai confirmed that he had consumed alcohol.

¶5     This prompted Tome to commence an investigation of Driving Under the Influence (DUI) of alcohol. Tome's investigation culminated in Gai providing a breath sample on an Intoxilyzer 8000 machine (Intoxilyzer) approximately two hours after the crash. The sample reported a blood alcohol concentration (BAC) of 0.081. Tome cited Gai for driving a motor vehicle on a public road with an alcohol concentration of 0.08 or more, in violation of § 61–8–406(1)(a), MCA, Montana's "DUI per se" statute.

2

¶6     Prior to trial, the State sent notice to Gai of its intention to introduce reports at trial from the Montana state crime laboratory (Crime Lab) concerning the Intoxilyzer's accuracy. Attached to the notice were Crime Lab reports documenting the Intoxilyzer's conformity with state administrative rules regarding regular maintenance and testing of the machine. Also attached was a report of Gai's Intoxilyzer test. The State's notice was sent in conformity with M. R. Evid. 803(6), which permits the State to introduce "written reports" from the Crime Lab that would normally be inadmissible hearsay, so long as the State gives sufficient notice to allow the defendant to depose the compiler of the reports or to subpoena the compiler for trial. Gai did not depose or subpoena anyone from the Crime Lab.

¶7     A bench trial in Justice Court was conducted on February 11, 2011. The State called Tome as its only witness, who recounted the events of August 8, 2010, and confirmed that Gai had provided a breath sample which reported a 0.081 BAC. Gai's counsel cross-examined Tome as to the accuracy of the Intoxilyzer. During this examination, Gai's counsel offered as evidence a 2005 letter sent from a Crime Lab forensic scientist to an attorney on another case. In the letter, the forensic scientist acknowledged that the Intoxilyzer had a margin of error of up to five percent. The Justice Court sustained a hearsay objection to the letter and excluded it. Gai's counsel continued to cross-examine Tome, who acknowledged that the Intoxilyzer was subject to potential inaccuracies.

3

¶8 At the close of the State's case-in-chief, Gai moved the Justice Court to dismiss the charge on the ground the State had failed to present sufficient evidence to establish guilt beyond a reasonable doubt. Gai argued that the margin of error in the Intoxilyzer's result created reasonable doubt that Gai's alcohol concentration had, in fact, reached the statutorily prohibited 0.08 level. During his argument on the motion, Gai's counsel re-offered the 2005 letter, and the Justice Court admitted it. The Justice Court did not immediately rule on the motion, and Gai rested without calling any witnesses. The Justice Court advised it would render a verdict in a few days. In a written order, the Justice Court denied Gai's motion and found him guilty. Gai appealed to the District Court, alleging the Justice Court erred, *inter alia*, by denying his motion to dismiss.

¶9 The District Court affirmed the Justice Court's denial of Gai's motion. The District Court began by noting that Gai had failed to depose or subpoena any expert from the Crime Lab to trial in response to the State's notice under M. R. Evid. 803(6) that it would introduce the reports. The District Court reasoned that Gai's failure to utilize these pre-trial procedures to attack the admission of these reports meant that he "essentially acquiesced" in the "collective veracity" of the Intoxilyzer machine and the 0.081 BAC result, and that the State had met its burden of proof by its Rule 803(6) disclosure. From this premise, the District Court concluded that Gai had forfeited his right to challenge the veracity of his breath test.

¶10 Gai appeals from the District Court's ruling.

## STANDARD OF REVIEW

¶11 We review cases that originate in justice court and are appealed to district court "as if the appeal originally had been filed in this Court." *State v. Ellison*, 2012 MT 50, ¶ 8, 364 Mont. 276, 272 P.3d 646. In other words, we undertake an independent examination of the record apart from the district court's decision and will "affirm the district court when it reaches the right result, even if it reaches the right result for the wrong reason." *Ellison*, ¶ 8. "In reviewing a criminal matter, this Court reviews a question concerning the sufficiency of the evidence to determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Weitzel*, 2006 MT 167, ¶ 7, 332 Mont. 523, 140 P.3d 1062.

## DISCUSSION

¶12 *1. Did the District Court err by affirming Gai's conviction based upon an incorrect application of Montana Rule of Evidence 803(6)?*

¶13 The District Court rejected Gai's appeal on the ground that Gai had forfeited his right to attack the veracity of his Intoxilyzer result during trial, and that the State, given the contents of the reports it had introduced without challenge under M. R. Evid. 803(6), had met its burden of proof. The District Court reasoned that a defendant who intends to challenge his Intoxilyzer result must do so prior to trial. Gai argues that M. R. Evid. 803(6) does not limit a defendant's ability to challenge the evidence, but serves merely as a foundational rule that permits the State to admit Crime Lab reports that would normally be excluded as hearsay.

5

¶14 Montana law makes hearsay inadmissible at trial unless an exception applies. M. R. Evid. 802. One exception is M. R. Evid. 803(6), which provides, in pertinent part:

> [W]ritten reports from the Montana state crime laboratory are within this exception to the hearsay rule when the state has notified the court and opposing parties in writing of its intention to offer such report or reports into evidence at trial in sufficient time for the party not offering the report or reports (1) to obtain the depositions before trial of the person or persons responsible for compiling such reports, or (2) to subpoena the attendance of said persons at trial.

Nothing in the text of M. R. Evid. 803(6) provides that a defendant's failure to challenge the reports prior to trial results in a forfeiture of his right to do so at trial. The Rule speaks to the *admission* of the reports, not the *effect* of the admitted evidence.

¶15 M. R. Evid. 104 addresses the effect of evidence admitted at trial. It provides, in pertinent part:

> (a) Questions of admissibility generally. Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court. In making its determination it is not bound by the rules of evidence except those with respect to privileges.
>
> . . .
>
> (e) Weight and Credibility. This rule does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility.

M. R. Evid. 104(a) and (e) explain that, while the trial judge is tasked with determining *admissibility* of evidence, the non-offering party remains free to challenge the *weight* or *credibility* of admitted evidence. *See State v. Losson*, 262 Mont. 342, 350, 865 P.2d 255, 260 (1993) (reasoning that the trial judge is not required to "scrutinize" the credibility and weight of statements admitted under a hearsay exception because, under M. R. Evid. 104(e), the jury decides whether the testimony is credible); *see also Weitzel*, ¶ 14

6

("Weitzel was also entitled to introduce evidence of the [Intoxilyzer's] weaknesses, which he did through cross-examination of the State's witnesses."). Admitted evidence is not unassailable.

¶16 M. R. Evid. 806 provides: "When a hearsay statement . . . has been admitted into evidence, the credibility of the declarant may be attacked and, if attacked, may be supported by any evidence which would be admissible for those purposes if the declarant had testified as a witness." Evidence used to attack the credibility of an Intoxilyzer result would include evidence of the Intoxilyzer's margin of error. M. R. Evid. 806 thus afforded Gai the opportunity to pursue testimony that supported his defense that the Intoxilyzer took an inaccurate reading of his BAC.

¶17 The Court of Appeals of Alaska came to the same conclusion in *Cooley v. Municipality of Anchorage*, 649 P.2d 251, 254–55 (1982):

> Breathalyzer tests results, like any other evidence, may be subject to attack and disproof. Even after the admission of the breathalyzer test results, the burden is still on the municipality to convince the jury that the breathalyzer test is accurate and that the defendant's blood or breath alcohol was above the prohibited level at the time of driving. Should the defendant have reason to believe that the test results inaccurately reflect his actual blood or breath alcohol concentrations, he can adequately confront the test through the usual tools which he has at his disposal in confronting any witness or evidence. He can rely on the fact that the municipality has the burden of proof, he can rely on cross examination, or he can present evidence on his own.

Gai had an evidentiary right to challenge the veracity of his Intoxilyzer breath test at trial, and it was error to the extent the District Court concluded otherwise. However, we must determine whether the District Court reached the right result in affirming Gai's

7

conviction. *Ellison*, ¶ 8. To do so, we "examine the record independently of the district court's decision" to determine if there was sufficient evidence for the Justice Court to find Gai guilty of DUI per se beyond a reasonable doubt. *Ellison*, ¶ 8.

¶18 *2. Did the District Court err in concluding that there was sufficient evidence to support Gai's conviction?*

¶19 Gai argues that the State presented insufficient evidence for the trier of fact—here, the Justice Court—to find that his blood alcohol level was 0.08 or greater. Because he presented evidence by way of the 2005 letter from the Crime Lab and Tome's admissions that the Intoxilyzer has a margin of error of up to five percent, Gai argues that there was reasonable doubt that his 0.081 BAC result in fact satisfied the statutory prohibition. The State counters that Gai's 0.081 BAC reading, in conjunction with other evidence of his alcohol consumption, is sufficient to support the conviction.

¶20 The elements of a DUI per se offense are provided in § 61–8–406(1)(a), MCA, which makes it unlawful for a person to drive or be in actual physical control of a "noncommercial vehicle upon the ways of this state open to the public while the person's alcohol concentration, as shown by analysis of the person's blood, breath, or urine, is 0.08 or more[.]" Gai challenges only the sufficiency of the evidence that his BAC was 0.08 or more.

¶21 Section 61–8–404, MCA, governs evidence that is admissible in a DUI per se trial. The statute permits the admission of breath test results taken by an Intoxilyzer. Section 61–8–404(1)(a), MCA; *see also State v. McGowan*, 2006 MT 163, ¶ 16, 332 Mont. 490,

8

139 P.3d 841 (recognizing that the statutes for DUI offenses allow for the admission of Intoxilyzer results); *accord Weitzel*, ¶ 14.

¶22    Gai's Intoxilyzer result and evidence of the Intoxilyzer's margin of error were both admitted into evidence.  In its role as factfinder, the Justice Court was then tasked with weighing the evidence and determining whether there was proof beyond a reasonable doubt that Gai's alcohol concentration was 0.08 or more.  The Justice Court accepted the Intoxilyzer's result as credible and rejected Gai's defense that his BAC was under the legal limit.  This Court will not "second-guess" the factfinders's determination. *Losson*, 262 Mont. at 350, 865 P.2d at 260 (holding that once evidence is admitted it is the jury's task to accept or reject it as credible).

¶23    Moreover, the Intoxilyzer's result was not the only evidence presented at the trial regarding the presence of alcohol in Gai's system.  Tome's observations of Gai at the scene of the accident and Gai's admissions that he had consumed alcohol were also admitted.  However, Gai argues that this evidence should not be considered because it is "completely irrelevant" to the question of whether his BAC was 0.08 or more.

¶24    We faced a similar issue in *Weitzel*.  There the defendant argued that the State did not present sufficient evidence at trial to uphold his DUI per se conviction.  *Weitzel*, ¶ 2. The defendant argued that the trial court erred in admitting the result of his Intoxilyzer breath test, which reported a BAC of 0.129, because the machine had up to a 10% margin

9

of error.[1]  *Weitzel*, ¶¶ 6, 9.  We held that the Intoxilyzer's margin of error went to "the weight of the test evidence, not the admissibility of the test results."  *Weitzel*, ¶ 14.  Thus, the defendant was free to argue that there was a reasonable doubt as to the accuracy of his results, and the prosecution was free to corroborate the test results with the arresting officer's observations:

> In this instance, the City presented additional evidence tending to verify the test results.  In its case against Weitzel the City presented the circumstantial evidence that [the arresting officer] smelled the odor of an alcoholic beverage when he stopped Weitzel, he observed Weitzel's eyes as bloodshot and glossy, and he observed clues indicating alcohol intoxication when Weitzel failed to satisfactorily perform field sobriety tests.  Further, Weitzel admitted to having ingested some alcohol, and a portable breath test also detected the presence of alcohol in his breath.

*Weitzel*, ¶ 15.  Given the test results and the corroborating evidence, we held that the evidence was sufficient to support the defendant's conviction.  *Weitzel*, ¶ 16.

¶25  *Weitzel* and the Rules of Evidence lead us to reject Gai's assertion that his observable conduct and his admissions are irrelevant as to whether the Intoxilyzer correctly measured his BAC level.  "The test of relevance is whether an item of evidence will have *any value*, as determined by logic and experience, in proving the proposition for which it is offered."  *State v. Oman*, 218 Mont. 260, 264, 707 P.2d 1117, 1119 (1985) (applying M. R. Evid. 401) (emphasis added).  The defendant's observable conduct

---

[1] The DUI per se statute in *Weitzel* is identical to the statute Gai was charged under, except the BAC threshold has been lowered from 0.10 to 0.08.  *Compare* § 61–8–406(1)(a) (2001) *with* § 61–8–406(1)(a) (2009).

10

consistent with consuming alcohol and his admission that he consumed alcohol has relevance and value in determining whether the Intoxilyzer's result was accurate.

¶26    This case illustrates that value. Gai blew a 0.081 BAC on the Intoxilyzer. Gai's defense relied upon evidence that the Intoxilyzer's result can deviate up to five percent from the subject's true BAC. Assuming a five percent deviation, Gai's alcohol concentration could have ranged anywhere from 0.077 to 0.086 BAC.[2] Accordingly, under Gai's theory that no other evidence could be considered, the trier of fact would have no further information to consider in rendering a decision. The jury would not be permitted to hear the reasons an officer initiated a stop or proceeded to the scene. There would be no context and no principled way for the trier of fact to decide whether the Intoxilyzer had reported accurately—indeed, the factfinder would essentially have to flip a coin.

¶27    On the other hand, by permitting relevant testimony, here by Tome, the factfinder was appropriately given a broader understanding of the circumstances against which to compare the Intoxilyzer result. Tome testified that Gai had crashed his pickup into an irrigation ditch, that he immediately observed the odor of an alcoholic beverage on Gai's breath, that Gai's eyes were glassy and bloodshot, and that Gai admitted to consuming alcohol. This evidence was relevant to the contested issue of Gai's blood alcohol concentration. As resolved under Issue 1, this evidentiary rule is a two-way street. The

---

[2] For the low end of the range, the calculation requires the multiplication of Gai's readout (0.081) by a five percent decrease (0.95), which equates to a 0.077 BAC. For the high end, the calculation requires the multiplication of Gai's readout (0.081) by a five percent increase (1.05), which equates to a 0.086 BAC.

defendant is free to challenge the Intoxilyzer's result in a similar manner—through testimony that his conduct and statements were not consistent with someone who had consumed alcohol to a prohibited level. Here, Tome's observations of Gai were admissible to corroborate the Intoxilyzer's result.

¶28 "[V]iewing the evidence in the light most favorable to the prosecution," *Weitzel*, ¶ 7, we conclude a rational trier of fact could have found beyond a reasonable doubt that Gai's alcohol concentration was over the statutorily proscribed limit.

¶29 Affirmed.

/S/ JIM RICE

We concur:

/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ BRIAN MORRIS

12