FILED

June 23 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0825

DA 13-0825

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 172N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

KIM MAURICE WILEY,

Defendant and Appellant.

APPEAL FROM:     District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-13-275
Honorable Karen S. Townsend, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Ashley Harada, Harada Law Firm, PLLC; Billings, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss,
Assistant Attorney General; Helena, Montana

James P. Nugent, Missoula City Attorney, Carrie Garber, Senior Deputy
City Attorney; Missoula, Montana

Submitted on Briefs:  May 13, 2015
Decided:  June 23, 2015

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Kim Maurice Wiley ("Wiley") appeals from the order of the Montana Fourth Judicial District Court, Missoula County, affirming the order of the Municipal Court of the City of Missoula, Missoula County, denying his motion to suppress. We affirm.

¶3 At approximately 1:47 a.m. on September 15, 2012, Missoula Police Officer Rico Suazo ("Suazo") stopped Wiley, who was driving an automobile near the intersection of Seventh and Russell in Missoula. Wiley was charged in Municipal Court with one count of driving while a habitual traffic offender in violation of § 61-11-213, MCA, and one count of failing to have proof of insurance in violation of § 61-6-302(2), MCA.

¶4 On March 18, 2013, Wiley filed a motion to suppress the evidence used to justify his traffic stop. The Municipal Court held an evidentiary hearing regarding the motion to suppress on April 22, 2013.

¶5 At the hearing, Suazo testified about the sequence of events leading to his stop of Wiley. Suazo stated that, during his tenure as an officer, he had had at least five previous encounters with Wiley. During some of those encounters Wiley had been driving the same car he drove on September 15, 2012. Suazo testified that he could recognize both Wiley and the car.

2

¶6    Suazo testified that on the night of the stop he observed a car driving near Fifth and Higgins, and recognized it as the car regularly used by Wiley. Though he did not see Wiley's face, Suazo was able to see the driver's "body" for a few seconds and identified the driver as Wiley.

¶7    Suazo began to follow the car. Suazo did not observe the car speeding or otherwise violating traffic regulations; however, Suazo suspected that Wiley's driver's license was suspended due to repeated traffic violations. Dispatch confirmed Wiley's suspended license and habitual traffic offender status. Suazo then initiated the stop.

¶8    The Municipal Court denied Wiley's motion to suppress on April 24, 2013. On May 9, 2013, Wiley entered a plea of nolo contendere to both charges, reserving his right to appeal the denial of his motion to suppress.

¶9    Wiley timely appealed the denial of his motion to the District Court. On September 6, 2013, the District Court issued an order affirming the Municipal Court's denial of the motion. Wiley now appeals to this Court.

¶10    We review cases that have been appealed to the district court as if the appeal had been originally filed in this Court. *State v. Gai*, 2012 MT 235, ¶ 11, 366 Mont. 408, 288 P.3d 164. In doing so, we examine the lower court record independent of the district court's decision and we will affirm the district court if it reached the correct result. *Gai*, ¶ 11.

¶11    We review a denial of a motion to dismiss to determine whether the trial court's findings of fact – including a finding that particularized suspicion exists – are clearly erroneous, and whether the court's interpretation of law is correct. *State v. Wagner*,

3

2013 MT 159, ¶ 9, 370 Mont. 381, 303 P.3d 285. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the lower court has misapprehended the effect of the evidence, or if our review of the record leaves us with a definite and firm conviction that a mistake has been made. *Wagner*, ¶ 9.

¶12 To pass constitutional muster, an officer's investigative stop of a vehicle must be reasonable. U.S. Const. amend. IV; Mont. Const. art. II, § 11; *State v. Roy*, 2013 MT 51, ¶ 15, 369 Mont. 173, 296 P.3d 1169. In the case of an investigatory stop, this means that circumstances must "create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." Section 46-5-401, MCA; *Roy*, ¶ 16.

¶13 To have particularized suspicion, an officer must have: "(1) objective data and articulable facts from which he or she can make certain reasonable inferences; and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to commit an offense." *State v. Brown*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842. A court looks to the facts and totality of the circumstances to determine whether particularized suspicion exists. *Brown*, ¶ 20.

¶14 In concluding that Suazo had probable cause to stop Wiley, the Municipal Court made the following findings of fact:

> 1) The Defendant was stopped on September 15, 2012, at approximately 1:47 a.m.
> 2) The Defendant was in the area of 5th and Higgins in Missoula, Montana.
> 3) The Officer recognized Mr. Wiley.
> 4) The Officer knew Mr. Wiley from at least five (5) previous encounters.
> 5) The Officer knew that Mr. Wiley regularly drove the car he observed.
> 6) The Officer was aware that Mr. Wiley had issues with his driver's license in the past and his driver's license might not be valid.

4

7) The Officer confirmed his knowledge that Mr. Wiley was not licensed through dispatch and initiated the stop.

Wiley argues that, taken together, these facts do not establish particularized suspicion. Wiley points out that Suazo admitted that the stop was at night, that the car's windows were tinted, and that Suazo never saw Wiley's face. Therefore, according to Wiley, the evidence is insufficient to show that Suazo could have recognized Wiley.

¶15    The Municipal Court heard evidence regarding the visibility conditions when Suazo first saw the vehicle and Wiley cross-examined Suazo at the evidentiary hearing. The court concluded that Suazo had been able to recognize Wiley based on a view of his body and the car he was driving. We cannot conclude that the Municipal Court's finding that Suazo recognized Wiley is not supported by substantial evidence or that the court misapprehended the effect of the evidence. Our review of the record does not leave us with a definite and firm conviction that a mistake has been made. It is plausible that an officer who knows a defendant and knows the defendant's vehicle could identify that defendant, while driving that vehicle, based on a view of that defendant's body type, size, or other characteristics without a view of the defendant's face. Furthermore, the record shows that Suazo was able to identify Wiley with sufficient certitude to be able to call dispatch and confirm the status of his driver's license. The finding that Suazo recognized Wiley prior to the stop is not clearly erroneous.

¶16    Wiley also argues that Suazo should have run the car's license plate, which would have identified the car as belonging to "an elder Mr. Wiley" rather than to Kim Wiley, and would not have shown a suspended license. Wiley cites no precedent for this

5

pronouncement. Indeed, "[a]n officer in the field need not consider every possible innocent explanation before concluding that particularized suspicion exists." *State v. Flynn*, 2011 MT 48, ¶ 11, 359 Mont. 376, 251 P.3d 143.

¶17 Applying the particularized suspicion standard: Suazo first observed a car he recognized to be one sometimes driven by Wiley, and then recognized Wiley as the driver. He also learned from dispatch that Wiley was a habitual traffic offender whose driving privileges were suspended. These articulable facts led Suazo to reasonably infer that Wiley was committing a crime by driving while a habitual traffic offender. The Municipal Court did not err by concluding that Suazo had particularized suspicion to stop Wiley. The District Court reached the same correct conclusion.

¶18 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶19 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JIM RICE