DA 14-0511

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2016 MT 63

CITY OF KALISPELL,

      Plaintiffs and Appellees,

    v.

TYLER OMYER, CALVIN ATHY and
GLORIA FERRARI,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause Nos. DC-13-326A, 13-263A
and 13-264A
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Chad Wright, Chief Appellate Defender, Natalie Wicklund, Assistant
Appellate Defender; Helena, Montana

      For Appellees:

          Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss,
Assistant Attorney General; Helena, Montana

          Charles A. Harball, Kalispell City Attorney, Emily Von Jentzen,
Assistant City Attorney; Kalispell, Montana

                              Submitted on Briefs:  January 27, 2016
                                      Decided:  March 15, 2016

Filed:

                        _____
                                   Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Gloria Ferrari, Calvin Athy, and Tyler Omyer (jointly Appellants) were convicted in the City of Kalispell Municipal Court of various traffic violations including driving with a suspended license. They appealed their convictions to the Eleventh Judicial District Court, Flathead County. After the District Court affirmed the convictions, they appealed separately to this Court. While the factual backgrounds differ slightly, the legal issue and analysis are identical; therefore we have consolidated these cases for the purpose of appeal and this Opinion. Attorney Greg Rapkoch represented each of the Appellants in the Municipal and District Courts. Assistant Appellate Defender Natalie Wicklund represented all of the Appellants before this Court. We affirm.

## ISSUES

*1. Did the District Court err in failing to determine whether § 61-5-212, MCA, imposed absolute liability on each of the Appellants?*

*2. Did the District Court abuse its discretion by holding that the evidentiary "letters of suspension" were admissible as "certified copies of public records" under M. R. Evid. 904 (Rule 904)?*

## FACTUAL AND PROCEDURAL BACKGROUND

*Gloria Ferrari*

¶2 On June 20, 2010, Gloria Ferrari was cited by Kalispell Police Officer A.J. McDonnell for various traffic violations including driving with a suspended license. The Kalispell Municipal Court conducted a bench trial on May 30, 2013. Ferrari was represented by appointed counsel Rapkoch but was not in attendance. McDonnell presented Ferrari's "Certified Driver Record" generated by the State of Montana

2

Department of Justice, Motor Vehicle Division (MVD), as well as six letters from MVD to Ferrari informing her that her license was suspended. Counsel objected to the suspension letters as hearsay and in violation of Ferrari's United States and Montana constitutional rights to confrontation. The Municipal Court admitted the evidence over counsel's objection. Ferrari was found guilty and sentenced to 180 days in jail with 178 suspended and fined $325.00. She appealed to the District Court.

*Calvin Athy*

¶3 On September 10, 2012, Calvin Athy was cited by Officer Stan Ottosen of the Kalispell Police Department for multiple traffic violations including driving with a suspended license. At the May 30, 2013 Municipal Court bench trial, Athy was represented by Rapkoch but Athy did not attend the trial. Ottosen testified at Athy's trial and presented Athy's "Certified Driver Record" as well as three letters from MVD to Athy notifying him that his license was suspended. Counsel objected to the letters on hearsay and Confrontation Clause grounds but the Municipal Court admitted the evidence and found Athy guilty. Athy was sentenced to a 180-day jail sentence with 178 days suspended and fined $325.00. On June 11, 2013, Athy appealed his judgment to the District Court.

*Tyler Omyer*

¶4 On December 8, 2012, Tyler Omyer was cited by Sargent Allen Bardwell of the Kalispell Police Department for multiple traffic violations including driving a motor vehicle with a suspended license. The Kalispell Municipal Court conducted a bench trial on June 27, 2013, at which Omyer was present and represented by Rapkoch. Bardwell

3

presented Omyer's "Certified Driver Record" as well as six letters sent by MVD to Omyer notifying him that his driver's license was suspended for reasons stated in the letters. Omyer objected to the admission of the MVD suspension letters on hearsay and Confrontation Clause grounds. The Municipal Court admitted the evidence, convicted Omyer of all offenses, and sentenced him to 180 days in jail with 178 suspended. The court allowed him to serve his time at the community car wash or the animal shelter. Additionally, he was fined $325.00. On July 25, 2013, Omyer appealed to the District Court.

¶5 The three cases were consolidated by the District Court for purposes of appeal. Counsel for the Appellants had not objected to, nor did he appeal, the Municipal Court's admission of the "Certified Driving Record" for each defendant as each record unequivocally established that the license for each driver was suspended at the time of the traffic stops and of citations to each. Rather, counsel argued that conviction of the offense of driving with a suspended license required the City to prove that each defendant had a culpable mental state, *i.e.*, that they "knew" their licenses were suspended at the time of their offenses. Counsel claimed that the only evidence presented of the Appellants' knowledge of their suspensions were the MVD suspension letters. Counsel asserted that these letters were inadmissible because they contained "testimonial hearsay" subject to the protections of the Confrontation Clauses of the United States and Montana Constitutions. The certificate of mailing language stamped onto the bottom of each notification letter and challenged by the Appellants read:

4

The undersigned hereby testifies that on the date below, he or she, as an officer or employee of the motor vehicle division, deposited in the United States mail at Helena, Montana, a copy of the paper to which this is affixed, in an envelope with the postage prepaid, addressed to the person named in the paper at his or her last address as shown by the records of the Department.

_____
Date     Officer or Employee of Department

Counsel argued that this language constituted testimony and was included in letters that were "prepared in anticipation of use at trial to prove historical facts relevant to prosecution." Counsel claimed that had the evidence been properly excluded, there would have been no evidence presented at trial establishing a "knowing" culpable mental state and Appellants could not have been convicted under § 61-5-212, MCA.

¶6 The City of Kalispell responded that the MVD letters were properly admitted as self-authenticating business records under § 61-11-102, MCA, and Rule 902(4) of the Montana Rules of Evidence. The City further argued that the challenged letters did not constitute testimonial evidence triggering the Confrontation Clause and were admissible under Rule 803(8), M. R. Evid. Lastly, the City countered that under § 26-1-602(24), MCA, it is presumed that a correctly addressed and mailed letter is received by the intended recipient and none of the Appellants rebutted this presumption at trial.

¶7 The District Court determined that the stamped certificates of mailing included in each suspension letter did not constitute testimonial hearsay; rather, the letters were certified copies of public records and were admissible under Rules 902(4) and 803(8) of the Montana Rules of Evidence. The court also concluded that Appellants had not

rebutted the statutory presumption that they had received the suspension letters; therefore, the court presumed receipt.

¶8 Appellants filed timely appeals.

**STANDARD OF REVIEW**

¶9 Section 3-6-110, MCA, governing a district court's review of a municipal court's ruling, confines the district court's review to the record and questions of law. Section 3-6-110(1), MCA. In turn, when this Court reviews the district court, we undertake an independent examination of the record apart from the district court's decision and will "affirm the district court when it reaches the right result, even if it reaches the right result for the wrong reason." *State v. Gai*, 2012 MT 235, ¶ 11, 366 Mont. 408, 288 P.3d 164. Based upon our review of the trial court's record, we review the trial court's factual findings under the clearly erroneous standard, its discretionary rulings for an abuse of discretion, and its legal conclusions de novo. *State v. Ellison*, 2012 MT 50, ¶ 8, 364 Mont. 276, 272 P.3d 646.

**DISCUSSION**

¶10 Each of the Appellants was convicted under § 61-5-212, MCA, which provides, in relevant part:

> (1)(a) A person commits the offense of driving a motor vehicle without a valid license or without statutory exemption or during a suspension or revocation period if the person drives:
> (i) a motor vehicle on any public highway of this state at a time when the person's privilege to drive or apply for and be issued a driver's license is suspended or revoked in this state or any other state . . . .

6

¶11 Appellants assert on appeal that the District Court abused its discretion by admitting testimonial hearsay evidence at trial in violation of the Confrontation Clauses of the Montana and the United States Constitutions. They claim that testimonial hearsay is "an out-of-court statement offered for the truth of the matter asserted and where the declarant spoke in a manner as to create evidence." They explain that in this case "unknown government agents purport to testify in writing that [defendant] should have had notice and knowledge of her [or his] suspended license." Appellants claim that testimonial hearsay is only permissible if a court determines a declarant is unavailable and the defendant had a prior opportunity for cross-examination. They argue this did not occur. They request that we reverse and remand for new trials with instructions that the trial court reject admission of the suspension letters.

¶12 The State counters that the suspension letters were not testimonial hearsay but were contemporaneous business records created for the administration of the MVD's operations and not for the purpose of establishing or proving some fact at trial. As such the letters were admissible. Additionally, the State asserts that even if the letters were erroneously admitted, the error was harmless because "driving with a suspended license" is an absolute liability offense that does not require knowledge of the suspension.

¶13 *1. Did the District Court err in failing to determine whether § 61-5-212, MCA, imposed absolute liability on each of the Appellants?*

¶14 We first address the State's assertion that § 61-5-212, MCA, establishes that driving with a suspended license is an absolute liability offense which does not require proof of a mental state. Notably, we have not decided previously whether this offense

7

requires proof of a mental state or is an absolute liability offense. To determine whether the legislature intended an offense to be an absolute liability offense we look to the language of the statute and the statute's apparent purpose. *State v. Huebner*, 252 Mont. 184, 827 P.2d 1260 (1992).

¶15 In *Huebner*, we concluded that § 87-3-102, MCA, prohibiting someone from killing a game animal and abandoning the meat, or removing only the parts suitable for trophy mounting, was an absolute liability statute based upon the State's responsibility for protecting public wildlife resources. *Huebner*, 252 Mont. at 188, 827 Mont. at 1263. We relied upon § 45-2-104, MCA, which currently provides that "A person may be guilty of an offense without having, as to each element of the offense, one of the mental states of knowingly, negligently, or purposely only if the offense is punishable by a fine not exceeding $500 or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." *Huebner*, 252 Mont. at 188, 827 Mont. at 1263. Applying a previous, but similar, version of § 45-2-104, MCA (1991), the *Huebner* Court determined that the language of the statute indicated a legislative purpose to impose absolute liability.

¶16 Turning to § 61-5-212, MCA, the statute does not contain any reference to a mental state, such as knowingly or purposely. It is clear based upon the many statutes in which the Legislature requires a specific mental state, for example, §§ 45-5-102, 45-5-201, 45-5-202, and 45-6-204, MCA, that had the Legislature intended to require one for this statute, it would have done so. Additionally, the legislative purpose of the statute is not difficult to discern. The State has a compelling interest in keeping unsafe drivers

8

off the road, especially drivers whose privileges have been suspended for various reasons such as unsafe driving, driving while under the influence of alcohol or drugs, or driving without liability insurance. *State v. Pyette*, 2007 MT 119, ¶ 27, 337 Mont. 265, 159 0P.3d 232.

¶17 Furthermore, while we note that § 45-2-104, MCA, is written in the disjunctive and requires only that the statutory penalty not exceed $500 *or* that the statute clearly indicates a legislative purpose to impose absolute liability, in this case both requirements are met in that § 61-5-212(1)(b)(i), MCA, provides with some exceptions, that a person convicted of driving during a period of license suspension may be fined "not more than $500." For these reasons, we conclude that the statute clearly indicates a legislative purpose to impose absolute liability and that conviction under this statute does not require a culpable mental state.

¶18 The elements of driving while suspended include driving "a motor vehicle on any public highway" when the driver's "privilege to drive . . . is suspended." The evidence presented in each of the Appellant's trials through admission of their Certified Driver Records established that they drove vehicles upon the public roads of this State while their licenses were suspended. As these were the only requirements necessary for conviction under § 61-5-212, MCA, the Municipal Court did not err in convicting the Appellants nor did the District Court err in affirming the Municipal Court. As we indicated above, we will not overturn a district court when it reaches the right result, even if it reaches the right result for a different or a wrong reason. *Gai*, ¶ 11.

¶19   *2. Did the District Court abuse its discretion by holding that the evidentiary "letters of suspension" were admissible as "certified copies of public records" under M. R. Evid. 904 (Rule 904)?*

¶20   We next address the Appellants' assertion that the letters notifying them of their suspensions contained "testimonial hearsay" and should not have been admitted or used to support their convictions. As indicated above, the District Court affirmed the Municipal Court's admission of the suspension letters, finding them to be certified copies of public records under Rule 902(4). The court further determined they were not testimonial in nature and were appropriately admitted under the public records hearsay exception set forth in Rule 803.

¶21   Rule 803(8), M. R. Evid. provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> .   .   .
>
> (8) Public records and reports. To the extent not otherwise provided in this paragraph, records, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. The following are not within this exception to the hearsay rule: (i) investigative reports by police and other law enforcement personnel; (ii) investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party; (iii) factual findings offered by the government in criminal cases; (iv) factual findings resulting from special investigation of a particular complaint, case, or incident; and (v) any matter as to which the sources of information or other circumstances indicate lack of trust worthiness.

> Rule 902(4), M. R. Evid. provides:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
>
> .   .   .

10

(4) Certified copies of public records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) or complying with any law of the United States or of this state.

¶22 In *Billings v. Lindell*, 236 Mont. 519, 771 P.2d 134 (1989), we addressed the self-authenticating nature of the MVD's driving records. We explained that the MVD has the duty to maintain records of license convictions and that it would be unreasonable for a custodian of the department to be present in court each time a record was necessary for a trial. *Billings*, 236 Mont. at 521, 771 P.2d at 136. We discussed some of the various methods developed by the Legislature through which authenticity is taken as established for purposes of admissibility. Two such methods were Rules 803(8) and 902(4), M. R. Evid. *Billings*, 236 Mont. at 521-22, 771 P.2d at 136. Based upon the plain language of these rules, the statutorily-mandated purpose of MVD's record-keeping, and our analysis in *Billings*, we conclude the District Court did not abuse its discretion in holding that the suspension letters were admissible under Rules 803 and 904.

¶23 Lastly, we note that our ruling is consistent with multiple U. S. Supreme Court decisions. That Court distinguishes between testimonial and non-testimonial hearsay, but has repeatedly declined to offer an exhaustive or comprehensive definition of "testimonial." *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004). *See also Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273 (2006). However, in *Davis*, the U. S. Supreme Court declared that statements are testimonial

11

when their "primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822, 126 S. Ct. at 2273-74. Subsequently, in *Melendez-Diaz v. Mass.*, 557 U.S. 305, 129 S. Ct. 2527 (2009), the Court further elaborated that "[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz*, 557 U.S. at 324, 129 S. Ct. at 2539-40.

¶24 In the case at bar, as in *Melendez-Diaz*, the primary purpose of the MVD's suspension letters is not to provide evidence in future criminal prosecutions but rather to notify drivers of a license suspension and to create a statutorily-mandated database of driver's license records. It is realistic to presume that the vast majority of suspension letters, and other MVD documentation, exist within the agency's database and printed copies are never generated for purposes of criminal prosecutions. This analysis supports our conclusion that driver's records are created for the administration of the MVD's affairs and not for the purpose of proving a fact at trial.

## CONCLUSION

¶25 For the foregoing reasons, we conclude the District Court neither erred nor abused its discretion in affirming the Municipal Court's convictions and judgments of the Appellants.

/S/ MICHAEL E WHEAT

12

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE