DA 13-0272

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 222

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

THOMAS LEE LAMARR,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Eleventh Judicial District,
                   In and For the County of Flathead, Cause No. DC 12-439A
                   Honorable Ted O. Lympus, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

            Wade Zolynski, Chief Appellate Defender; David G. Dennis, Assistant
            Appellate Defender; Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General; Tammy A. Hinderman,
            Assistant Attorney General; Helena, Montana

            Ed Corrigan, Flathead County Attorney; Caitlin Overland, Deputy County
            Attorney; Kalispell, Montana


                         Submitted on Briefs:  June 4, 2014
                                  Decided:  August 19, 2014


Filed:

_____
                          Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Thomas Lamarr appeals the Eleventh Judicial District Court's decision affirming his misdemeanor assault conviction by a jury in Flathead County Justice Court.

¶2     The sole issue on appeal is whether the Justice Court's admission of testimony regarding threats and an assault allegedly committed by Lamarr prior to the charged assault entitles Lamarr to a new trial.

¶3     We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4     On June 21, 2012, the Flathead County Attorney's Office filed a complaint charging Lamarr with one count of misdemeanor assault.  The Justice Court held a trial on November 8, 2012, and the jury found Lamarr guilty of the charged offense.

¶5     The conviction arose out of an altercation occurring between Lamarr and the alleged victim, Wesley Hill, at the Garden Bar in Bigfork, Montana, on May 26, 2012. On that night, Hill was drinking at the Garden Bar with friends, including Axel Huckins and Heidi Jelly.  Huckins and Jelly recently had rekindled their prior relationship, following the end of Jelly's relationship with Lamarr.  At the time, Jelly was pregnant with Lamarr's child.  Lamarr allegedly had been threatening Huckins via telephone calls and text messages because of Huckins's relationship with Jelly.

¶6     At around 9:00 p.m., Huckins went outside of the bar to meet a friend.  Lamarr approached Huckins in the parking lot and they argued back and forth.  Huckins, who is partially paralyzed and confined to a wheelchair, later testified that Lamarr got down on

2

one knee, said "let me get down on your level," and hit Huckins across the face. Huckins testified that others came to break up the fight and several police officers arrived. Huckins declined to pursue charges against Lamarr because he did not want to deal with Lamarr any further.

¶7 Huckins then went back into the bar, sat down with his group of friends, and began telling Hill what occurred in the parking lot. Within minutes, Lamarr approached and, concerned that Jelly was drinking alcohol, asked her what she was drinking. In response, she threw her glass of water in his face. When Huckins confirmed that Lamarr was the assailant from the parking lot, Hill stood up, placed his hands on Lamarr's arms, and told him that they did not "need this tonight" and asked him to "please leave." Lamarr responded, "please don't do this," and "I'm warning you," and then head-butted Hill twice in quick succession. Huckins and other bar patrons broke up the fight. Hill suffered a broken nose and a split lip requiring six stitches. Within the next few days, Hill reported the incident to the Flathead County Sheriff's Office and Lamarr was charged with assault.

¶8 Prior to trial, the State filed a motion in limine requesting that the court allow Huckins to testify regarding Lamarr's threats and the altercation that occurred between Huckins and Lamarr prior to the charged assault. The court heard arguments on the State's motion the morning of trial and ruled, over Lamarr's objection, that the evidence was admissible. During Huckins's testimony, Lamarr renewed his objection to the information, stating that the probative value of Huckins's testimony regarding the prior

3

threats and altercation was outweighed by its prejudicial effect. The court again ruled that the evidence was not too attenuated because the assault of Huckins was the reason Hill got involved with Lamarr. The court gave a curative instruction, reminding the jury that Lamarr could not be found guilty for anything other than the charged offense. Following the guilty verdict, Lamarr appealed to the District Court, which affirmed the Justice Court's evidentiary ruling.

## STANDARD OF REVIEW

¶9 "We review cases that originate in justice court and are appealed to district court 'as if the appeal originally had been filed in this Court.'" *State v. Gai*, 2012 MT 235, ¶ 11, 366 Mont. 408, 288 P.3d 164 (quoting *State v. Ellison*, 2012 MT 50, ¶ 8, 364 Mont. 276, 272 P.3d 646). Accordingly, we "undertake an independent examination of the record apart from the district court's decision . . . ." *Gai*, ¶ 11.

¶10 A trial court has broad discretion when determining the relevance and admissibility of evidence and we review its rulings for an abuse of discretion. *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811. To the extent that the district court's ruling is based on an interpretation of an evidentiary rule or statute, our review is de novo. *Derbyshire*, ¶ 19.

## DISCUSSION

¶11 *Whether the Flathead County Justice Court erred by allowing testimony regarding Lamarr's alleged threats and conduct prior to the charged assault.*

¶12 M. R. Evid. 404(b) prohibits evidence of "other crimes, wrongs, or acts" used to "prove the character of a person in order to show action in conformity therewith." Prior

4

acts of the accused may be admissible, however, for other purposes. One such purpose is provided in Montana's so-called "transaction rule." Section 26-1-103, MCA. That section provides: "Where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction."

¶13 We have held that § 26-1-103, MCA, allows evidence of acts that are "inextricably linked" with and "explanatory of" the charged allegations. *State v. Guill*, 2010 MT 69, ¶ 25, 355 Mont. 490, 228 P.3d 1152. The rationale for admitting evidence of the transaction is two-fold. First, "it is theoretically difficult to subdivide a course of conduct into discrete criminal acts and 'other' conduct," and second, "it is difficult for a witness to testify coherently to an event if the witness is only permitted to reference the minutely defined elements of the crime." *Guill*, ¶ 27 (citing Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* vol. 22, § 5239, 446 (West 1988)).

¶14 We have been careful to limit the transaction rule's application, noting that it should not be used to avoid Rule 404(b)'s prohibition against character evidence. *State v. Stout*, 2010 MT 137, ¶¶ 38-39, 356 Mont. 468, 237 P.3d 37. Further, we have held that evidence offered under the transaction rule is subject to fact-specific balancing under M. R. Evid. 403, which allows the court to exclude relevant material when its prejudicial effect substantially outweighs its probative value. *State v. Hardman*, 2012 MT 70, ¶ 16, 364 Mont. 361, 276 P.3d 839.

¶15 Lamarr first asserts that the Justice Court did not use the correct "inextricably linked" standard to determine whether the testimony could be presented under the transaction rule and that we should therefore review its application of the rule de novo. During the pre-trial hearing, the court ruled that Huckins's testimony would be allowed because "it was part of the same transaction" and "Huckins was involved all the way." Although the court did not use the words "inextricably linked," it is clear from the court's comments that it utilized the correct standard. The Justice Court analyzed whether evidence of the altercation between Huckins and Lamarr was necessary to explain the altercation between Lamarr and Hill or whether it was "too attenuated." We conclude that the Justice Court correctly interpreted the legal standard imposed by the transaction rule and decline to review its application de novo. Admission of evidence is reviewed for abuse of discretion. *Derbyshire*, ¶ 19.

¶16 Lamarr asserts that the threats and assault against Huckins were not inextricably linked to the charged offense. He argues that there was a "temporal break in the exchanges between Huckins and Lamarr, and Hill and Lamarr," and that the alleged text-message threats were "not made on the day of the alleged offense or even the day prior."

¶17 We have not limited the use of the transaction rule to evidence of acts occurring immediately prior to the crime. *Stout*, ¶ 41. "[W]hile the timing of the events is relevant to admissibility under the transaction rule, it is not determinative." *State v. Mackrill*, 2008 MT 297, ¶ 43, 345 Mont. 469, 191 P.3d 451. Rather, admissibility is "predicated on the jury's right to hear what happened prior to the alleged offense, so that it may

6

evaluate the evidence in the context in which the alleged criminal act occurred." *State v. Berosik*, 2009 MT 260, ¶ 45, 352 Mont. 16, 214 P.3d 776. Use of the transaction rule "is most legitimate[] . . . to admit uncharged misconduct when such conduct arises from a continuing series of events." *Guill*, ¶ 45. In *Mackrill*, we upheld the District Court's decision to allow evidence of defendant's unruly behavior at various bars throughout the night of the charged offense. *Mackrill*, ¶ 43. We determined that the events occurring at other bars the same night that the defendant assaulted the victim at a bar were "sufficiently contemporaneous with the assault itself." *Mackrill*, ¶ 43.

¶18 Here, Huckins's testimony about the threats and the parking-lot assault was linked to and explanatory of Lamarr's assault of Hill. Hill's decision to get involved and ask Lamarr, a man he had never met, to leave the bar was based on the information related to him by Huckins. That information was necessary for the jury to have context for the exchange between Lamarr and Hill. Both Huckins and Hill testified as to how Huckins's prior interaction with Lamarr influenced the way they handled the situation when Lamarr approached their table in the bar. The situation developed as a "continuing series of events" and was "sufficiently contemporaneous." *Guill*, ¶ 45; *Mackrill*, ¶ 43. The Justice Court determined that Hill would not have gotten involved at all but for the prior exchanges between Huckins and Lamarr. We conclude that Lamarr has not demonstrated an abuse of the trial court's discretion in admitting the evidence.

¶19 Lamarr also argues that the court failed to properly address his Rule 403 objection that Huckins's testimony would be substantially more prejudicial than probative. "Rule

7

403 does not require the exclusion of relevant information simply because it is prejudicial. In a criminal prosecution most of the evidence offered by the prosecution is prejudicial to the defendant." *State v. Stewart*, 2012 MT 317, ¶ 68, 367 Mont. 503, 291 P.3d 1187. A court has discretion to exclude the evidence only when it poses a danger of unfair prejudice that substantially outweighs its probative value. M. R. Evid. 403.

¶20 Here, the court determined that because "Huckins was involved all the way," his testimony regarding the events was highly probative to the charged offense. Further, the court was not convinced that the evidence was unfairly prejudicial, stating that all evidence is prejudicial in one way or another. Lamarr argues that the State's proferred reason for probative value—to establish Lamarr's mental state—was inapplicable because Lamarr asserted a justifiable-use-of-force defense, admitting that he acted with purpose or knowledge. Lamarr ignores that a justifiable-use-of-force defense generally is not available to a defendant "who purposely or knowingly provokes the use of force against the person." Section 45-3-105(2), MCA. Lamarr's previous encounters with Huckins assisted the jury in determining who was the aggressor in the situation and whether Lamarr provoked the use of force. Although Lamarr makes conclusory statements asserting prejudice, he has failed to point to any unfair prejudice resulting from Huckins's testimony, much less any that would substantially outweigh the testimony's probative value. We conclude that the Justice Court did not err in refusing Lamarr's request to exclude the evidence under Rule 403.

8

¶21 Lamarr finally argues that Huckins's testimony regarding the prior threats was inadmissible because the State did not provide proper notice during discovery. At trial, Huckins testified that Lamarr had sent him death threats in the weeks leading up to the parking-lot assault. Lamarr argues that Huckins's written statement was not enough to put Lamarr on notice that evidence regarding death threats would be introduced.

¶22 Under the statutes governing discovery, the State must disclose to the defendant, upon request, the witnesses it may call and the evidence it may introduce. Section 46-15-322, MCA. Nevertheless, the State "may not be required to prepare or disclose summaries of witnesses' testimony." Section 46-15-322(5), MCA. Here, the State disclosed that Huckins would be called as a witness and submitted his written statement to the defense. In relevant part, this statement provided that "[Lamarr] began to threaten me and slap me as hard as he could which he had said before via text he was planning to do."

¶23 Huckins included in his written statement that Lamarr had threatened him. Lamarr had the opportunity to interview Huckins prior to trial to obtain additional information regarding the text messages. Lamarr also had the opportunity to cross-examine Huckins regarding inconsistencies between his written statement and his trial testimony. Lamarr has not demonstrated that the State was aware that Huckins would describe the threats as "death threats" in his testimony or that it wrongfully withheld information regarding the nature of the threats. We conclude that the Justice Court properly determined that the

9

State met its discovery obligation and did not abuse its discretion by allowing the evidence at trial.

¶24  Affirmed.

/S/ BETH BAKER

We concur:

/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ JIM RICE

10