FILED

July 14 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0158

DA 14-0158

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 195

STATE OF MONTANA,

Plaintiff and Appellee,

v.

JOHN ROBERT KEBBLE,

Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC 11-280
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jack H. Morris, Morris Law Firm, PLLC, Helena, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Brenda K. Elias, Assistant
Attorney General, Helena, Montana

Ole Olson, Assistant Attorney General, Special Deputy County Attorney
for Cascade County, Helena, Montana

John Parker, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  March 4, 2015
Decided:  July 14, 2015

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1    John Robert Kebble appeals various rulings of the Cascade County justice court arising from charges that Kebble violated § 37-47-301, MCA, by acting as an outfitter without a license.  These rulings were affirmed by the Eighth Judicial District Court, Cascade County.  We reverse on Issue 1 and remand for further proceedings.  We provide guidance on Issues 2 and 3 for purposes of remand.

## ISSUES

¶2    Did the justice court abuse its discretion in denying Kebble's challenge for cause of a prospective juror?

¶3    Did the justice court abuse its discretion when it granted the State's motion in limine, prohibiting Kebble from presenting evidence to the jury regarding the circumstances surrounding suspension of his outfitters license?

¶4    Did the justice court err when it sentenced Kebble pursuant to the statute in effect at the time he committed the crime, rather than pursuant to the statute that was in effect at the time he was charged and convicted?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    In 2004, John Robert Kebble was an outfitter licensed by the State of Montana and conducting business as Great Waters Outfitting in Red Lodge, Carbon County, Montana.  On March 8, 2004, Kebble entered a plea of guilty to criminal possession of dangerous drugs.  In April 2004, the Montana Twenty-Second Judicial District Court in Carbon County (hereinafter Carbon County district court) imposed a one-year deferred sentence subject to specific terms and conditions.  On May 25, 2004, Kebble, who was under

2

supervised probation with the Department of Corrections, failed a random drug test. As a result of the failed test, Kebble's probation officer sought an administrative intervention hearing pursuant to § 46-23-1015, MCA. On June 22, 2004, following the intervention hearing, Kebble, his probation officer, and the administrative hearings officer entered into a written agreement entitled Intervention Hearing Agreement (IHA). Under this IHA, Kebble was sentenced to three days in jail to be served in July 2004, "in lieu of a formal violation being filed at [that] time."

¶6     On June 29, 2004, the Montana Board of Outfitters took disciplinary action against Kebble and suspended his license under the same terms and conditions as contained in the Carbon County district court sentence and "until such time that [his] civil rights have been restored pursuant to law."

¶7     Also on June 29, 2004, Kebble's probation officer notified the Montana Attorney General's office of Kebble's probation violation and the agreed upon administrative sanction. Despite the IHA, in July 2004 the Montana Attorney General petitioned for revocation of Kebble's deferred sentence. The Carbon County district court granted the petition and sentenced Kebble to a term of five years, all suspended. Kebble filed a petition for postconviction relief requesting that the Carbon County district court reinstate his original deferred sentence.

¶8     In late May and early June 2006, while Kebble's postconviction petition remained pending in Carbon County district court, Montana Fish, Wildlife and Parks (FWP) wardens observed Kebble on the Missouri River in Cascade County with a group of people who were fishing. They approached Kebble and asked if he was acting as an

3

outfitter. Kebble denied that he was and acknowledged that his license was suspended at that time. Unconvinced that Kebble was not outfitting, the wardens commenced an investigation that led to documented evidence that between May 2005 and June 2006, Kebble conducted multiple outfitting trips. On June 14, 2006, Kebble was arrested for probation violations.

¶9 In September 2007, the Assistant Attorney General filed a complaint in Cascade County justice court against Kebble alleging that he had committed 38 misdemeanor violations of outfitting without a license.

¶10 Subsequently, on January 16, 2009, in response to Kebble's postconviction petition, the Carbon County district court set aside the July 2004 revocation of Kebble's one-year deferred sentence, concluding that once a probation officer elects and conducts an informal intervention, the State may not pursue a formal revocation for the same reported violation. The court thereby reinstated, by nunc pro tunc order, the April 16, 2004 Judgment and Order Deferring Imposition of Sentence Subject to Conditions. Kebble promptly filed a motion to withdraw his guilty plea and dismiss the drug charges with prejudice. On February 4, 2009, the Carbon County district court granted Kebble's motion, allowing him to withdraw his guilty plea to the charge of felony possession of dangerous drugs as of April 16, 2005. The court dismissed the charge with prejudice.

¶11 Following the entry of the 2009 Carbon County district court order, Kebble filed multiple pretrial motions in the Cascade County justice court, among other things seeking to introduce evidence of the ultimate outcome of his Carbon County proceeding. In response, the State filed a motion in limine seeking to prohibit Kebble from introducing

evidence pertaining to the Carbon County proceeding. The State's motion was granted and Kebble's motions were denied. The Cascade County justice court conducted a jury trial from July 12-15, 2010, and the jury found Kebble guilty of all 38 counts. Kebble was sentenced on January 25, 2011, and ordered to pay fines in the amount of $12,730. He also was sentenced to serve 36 days in the Cascade County Detention Center with his remaining jail time suspended.

¶12 Kebble appealed the justice court ruling on five grounds to the Cascade County District Court. In January 2014, the Cascade County District Court affirmed both the justice court's ruling and sentence.

¶13 Kebble filed a timely appeal.

## STANDARD OF REVIEW

¶14 We review cases that originate in justice court and are appealed to district court as if the appeal originally had been filed in this Court. Accordingly, we undertake an independent examination of the record apart from the district court's decision. *State v. Lamarr*, 2014 MT 222, ¶ 9, 376 Mont. 232, 332 P.3d 258 (citations and quotations omitted).

¶15 We review a court's decision to deny a challenge for cause of a juror for an abuse of discretion. We will reverse the judgment and order a new trial if a court abuses its discretion by denying a defendant's challenge for cause, the defendant removes the challenged prospective juror with a peremptory challenge, and the defendant exhausts his peremptory challenges. *State v. Braunreiter*, 2008 MT 197, ¶ 7, 344 Mont. 59, 185 P.3d 1024 (citations omitted).

5

¶16    A trial court has broad discretion in determining the relevance and admissibility of evidence. Thus, as a general rule, we review a trial court's evidentiary rulings, such as rulings on motions in limine, for abuse of discretion. *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811 (citations omitted).

¶17    We review a criminal sentence for legality to determine whether the sentence is within statutory parameters. Such a determination of legality is a question of law, which we review de novo. *State v. Adams*, 2013 MT 189, ¶ 11, 371 Mont. 28, 305 P.3d 808 (citation omitted). If, however, the defendant is sentenced to serve less than one year of actual incarceration, we review the sentence both for legality and for an abuse of discretion. *City of Bozeman v. Cantu*, 2013 MT 40, ¶ 11, 369 Mont. 81, 296 P.3d 461.

## DISCUSSION

¶18    *Did the justice court abuse its discretion in denying Kebble's challenge for cause of a prospective juror?*

¶19    After discovering Kebble engaged in what appeared to be an outfitting excursion in May or June 2006, FWP initiated an investigation. As part of the investigation, the agency obtained the personal computers of Kebble and his wife. Upon taking possession of the computers, FWP agents contacted the Department of Justice (DOJ) Division of Criminal Investigation (DCI) and requested that DCI examine the computers. Jimmy Weg was the agent in charge of the computer crime unit for DOJ DCI at the time and undertook the requested examination. He provided copies of multiple emails and other documents from Kebble's computer that supported FWP's allegation that Kebble was

6

conducting outfitting trips. These documents were later introduced to the jury through Weg as a witness for the State.

¶20 Prior to the justice court trial, a jury panel consisting of 24 persons was summoned, with six jurors and one alternate ultimately selected. Prior to designating the panel, the clerk of justice court sent a "Questionnaire as to Qualification for Jury Service" to prospective jurors. Philip Matteson completed and returned the questionnaire in which he indicated that he was employed as a criminal investigator for DOJ DCI.

¶21 During voir dire, the prosecutor questioned Matteson about his ability to be impartial, and while the transcript of the proceedings was of limited assistance,[1] nothing in Matteson's responses suggested that Matteson was prejudiced or biased in favor of the prosecution. Kebble's counsel also questioned Matteson. After confirming that Matteson worked for DOJ DCI and knew the prosecuting attorney, Weg, and several of the FWP wardens scheduled to testify for the State, defense counsel requested that Matteson be removed for cause. The court suggested that counsel make inquiries about Matteson's ability to be a fair and impartial juror. After asking numerous questions of Matteson, the responses of which were frequently recorded as "inaudible" in the transcript, Kebble's counsel continued his voir dire of the other prospective jurors. As the time for voir dire was drawing to a close, Kebble's counsel requested more time but the court denied his request when he could not articulate the information he hoped to derive through additional questioning. Counsel then repeated his earlier request, stating:

---

[1] The transcriber was not present in the courtroom but rather transcribed the proceeding from a taped recording. The 271-page transcription contained 284 references to "inaudible."

7

[F]or the record I would like to move the [c]ourt to remove Mr. Philip Matteson for cause because he's an employee of the Department of Justice. He's an employee with the Department of Justice. He's a criminal investigator. And I think it is just an appearance of impropriety to leave him on.

The justice court denied counsel's motion noting that Matteson had answered all the questions correctly and indicated no bias. Kebble used one of his three peremptories to remove Matteson and ultimately exhausted all of his peremptory challenges.

¶22 It is well-established that a criminal defendant has a fundamental right to be tried by an impartial jury. *State v. Allen*, 2010 MT 214, ¶ 25, 357 Mont. 495, 241 P.3d 1045. To safeguard this important right, the Legislature enacted § 46-16-115(2)(a)-(j), MCA, setting forth ten reasons a party to a criminal trial may challenge a juror for cause. The statute also provides that the trial judge may consider "any other reason" that may indicate partiality or bias on the part of a prospective juror. Section 46-16-115(1), and (2)(b) and (j), MCA, are relevant to the case before us and provide:

> (1) Each party may challenge jurors for cause, and each challenge must be tried by the court.
>
> (2) A challenge for cause may be taken for all or any of the following reasons or for any other reason that the court determines:
>
> .  .  .
>
> (b) standing in the relation of guardian and ward, attorney and client, master and servant, landlord and tenant, or debtor and creditor with or being a member of the family or in the employment of the defendant or the person who is alleged to be injured by the offense charged or on whose complaint the prosecution was instituted; [or]
>
> .  .  .

8

(j) having a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party.

¶23 Kebble's counsel did not reference § 46-16-115, MCA, at any time during his requests to the justice court for Matteson's removal. While observing that Matteson was employed by the DOJ DCI, counsel's verbalized concern was not partiality or bias but rather "an appearance of impropriety." Subsequently, in his argument on appeal to the Cascade County District Court, Kebble again did not reference § 46-16-115, MCA. It was the District Court's order on appeal that first introduced § 46-16-115, MCA, into the analysis. The District Court concluded that, from the record:

> [T]here appears to be no showing of partiality or bias on the part of Juror Matteson, nor does he exhibit any of the other characteristics giving rise to a for cause challenge under § 46-16-115, MCA. While . . . Matteson was employed by the Department of Justice, his answers in voir dire showed no signs of acting with . . . partiality. Juror Matteson's testimony, taken as a whole, raises no doubts of his ability to be fair and impartial. His employment alone does not justify a removal for cause.

¶24 On appeal before this Court, Kebble urges us to apply § 46-16-115(2)(b), MCA, claiming that Matteson should have been dismissed because he was "not unbiased." He asserts that Matteson was employed by the DOJ, worked on criminal investigations, and testified in court cases with Weg and in cases in which the prosecuting attorney was acting as prosecutor. The State counters that Kebble is raising the statutory basis for a challenge for cause for the first time on appeal and consequently we should decline to consider it.

¶25 We have determined to address the merits of Kebble's claim based upon counsel's general reference in justice court to Matteson's employment as a justification to remove

Matteson for cause, and because we conclude that the District Court's ruling is premised upon what we conclude to be an erroneous interpretation of § 46-16-115, MCA.

¶26 Section 46-16-115, MCA, was first enacted in 1967 as § 95-1909, R.C.M (1947), and set forth ten reasons, in the disjunctive, for which a prospective juror could be removed for cause. Section 95-1909(d)(2)(ii) and (d)(2)(x), provided that a challenge for cause may be taken if a prospective juror was employed by the entity "whose complaint the prosecution was instituted" or if the prospective juror had a state of mind which would prevent "him from acting with entire impartiality and without prejudice to the substantial rights of either party."

¶27 The legislative history for this law is thin as few notes were kept of legislative committee proceedings in 1967. Therefore, we have no real guidance from the Legislature as to how the Legislature intended this law to apply.

¶28 The Court first interpreted this statute in *State v. Thomson*, 169 Mont. 158, 545 P.2d 1070 (1976). In *Thomson*, Thomson was convicted of possession and distribution of dangerous drugs. He appealed his conviction in part on the ground that the district court denied his challenge for cause of a prospective juror who was employed by the State Fish and Game Department and had been in law enforcement. *Thomson*, 169 Mont. at 161, 545 P.2d at 1071. The juror was later removed through one of Thomson's peremptory challenges but Thomson claimed the court erred when it did not remove the juror for cause. *Thomson*, 169 Mont. at 162, 545 P.2d at 1072. Although acknowledging on appeal that the prospective juror was an employee of the State Fish and Game Department, the Court did not analyze the challenge for cause under that provision of the

10

predecessor statute addressing excuses for cause premised on employment. The Court said that the only provision contained in § 95-1909(d)(2), R.C.M., that would allow a challenge for cause of a law enforcement officer would be subsection (x), which allowed a challenge for cause to be taken where a juror cannot act with impartiality due to his state of mind. *Thomson*, 169 Mont. at 163, 545 P.2d at 1072. The Court determined that voir dire examination of the juror did not show implied or actual bias and therefore Thomson was not entitled to have the juror removed for cause. *Thomson*, 169 Mont. at 165, 545 P.2d at 1074. The Court observed that as a game warden, the juror had no connection with offenses committed in violation of the drug laws of this state. The Court said: "The bare fact that he is connected with law enforcement does not, without more, necessitate a finding that he would not be an impartial juror." *Thomson*, 169 Mont. at 163, 545 P.2d at 1073.

¶29 This Court has substantively addressed the "employment" category set forth at § 46-16-115(2)(b), MCA, (and its predecessor § 95-1909, R.C.M.) on only two occasions. In S*tate v. Radi*, 176 Mont. 451, 460, 578 P.2d 1169, 1175 (1978), we held that a potential juror's status as a public official and thus a legal advisee of the county attorney was insufficient to disqualify a public official as a juror. In *State v. Richeson*, 2004 MT 113, ¶ 26, 321 Mont. 126, 89 P.3d 958, we affirmed the district court's denial of Richeson's challenge for cause to a juror who was a detention officer in the facility where the defendant was being held pending trial. In both of these cases, after concluding that the juror's employment status alone did not justify his removal for cause, we addressed whether the jurors' employment would create a bias against the respective

defendant and concluded based upon voir dire that it did not. Thus, we have not previously addressed a case in which the prospective juror's employment status *does* justify removal for cause.

¶30 Kebble argues on appeal that the District Court erred in refusing to dismiss Matteson for cause in light of his employment with DOJ. He maintains that because Matteson worked with Weg in the same department and division, Matteson should have been dismissed for cause under § 46-16-115(2)(b), MCA. Kebble also again invokes bias as a ground for recusal. As noted previously, while Kebble did not specifically argue the application of § 46-16-115(2)(b), MCA, to the court, his argument was based upon the employment relationship between Matteson and a primary witness for the State. We must therefore determine whether the District Court erred in failing to consider Matteson's employment status under § 46-16-115(2)(b), MCA, when evaluating Kebble's challenge for cause, and whether it erred in failing to remove Matteson for cause.

¶31 We conclude that the District Court abused its discretion by affirming the rejection of Kebble's challenge for cause under the bias or prejudice standard set forth in § 46-16-115(2)(j), MCA, without analyzing the challenge under § 46-16-115(2)(b), MCA. This is the specific statutory provision that addresses whether removal for cause is justified because the prospective juror is in the employment of the person [or entity] upon whose complaint the prosecution was instituted. Unlike the situation in *Thomson*, in which the prospective juror was in the employment of the State but in a wholly unrelated capacity, Matteson was employed by DOJ and specifically by DCI, which was the division in which Weg, an integral witness for the State, was employed. Weg examined

12

Kebble's computer records prior to charges being brought, and testified to the content of those records at trial. Although the investigation was initiated on the complaint of FWP, Weg's investigation at FWP's behest was instrumental in the commencement of the criminal complaint filed by the State of Montana against Kebble. As indicated, Matteson knew Weg, knew the prosecuting attorney, and also knew several of the FWP wardens scheduled to testify for the State. Matteson was clearly in the employment of the very department and division that was involved in the prosecution of Kebble. Therefore, he should have been excused for cause pursuant to § 46-16-115(2)(b), MCA, notwithstanding the court's conclusion that "his answers in voir dire showed no signs of acting with . . . partiality."

¶32    An argument can be made that because the direct application of subsection (2)(b) to Matteson justifies Matteson's excuse for cause—without more—the District Court erred in separately exploring whether he had a state of mind that might prevent him from acting with entire impartiality, pursuant to subsection (2)(j). While we conclude that the court erred in not excusing Matteson for cause under subsection (2)(b), we cannot conclude that it is error for a court to explore whether a subject juror could act with impartiality. As we stated in *Great Falls Tribune v. District Court*, 186 Mont. 433, 440, 608 P.2d 116, 120 (1980) "[t]he purpose of voir dire in a criminal proceeding is to determine the existence of bias and prejudice on the part of prospective jurors and to enable counsel to intelligently exercise his peremptory challenges." It is similarly evident that the purpose of § 46-16-115, MCA, is to eliminate from the jury pool for cause someone who, due to an employment relationship or a personal relationship, past

13

experience, or direct personal knowledge of the crime or the defendant, cannot logically be expected to set aside her resulting state of mind and act with entire impartiality. As both a statutory and practical matter, the question of bias underlies the entire voir dire process.

¶33 Further, we held in *State v. Williams*, 262 Mont. 530, 866 P.2d 1099 (1993), *overruled in part on other grounds in State v. Good*, 2002 MT 59, ¶ 63, 309 Mont., 113, 43 P.3d 938, that where a prospective juror in a deliberate homicide case was subject to challenge for cause under two separate subsections of § 46-16-115, MCA (subsection (2)(e) for having previously served on a trial jury that tried another person for homicide, and subsection (2)(j) for having a state of mind that would prevent her from acting with entire impartiality), the juror should have been excused for cause based on both subsections. *Williams*, 262 Mont. at 537, 866 P.2d at 1103. We subsequently observed in *State v. Devore*, 1998 MT 340, 292 Mont. 325, 972 P.2d 816, *overruled in part on other grounds in Good*, ¶ 63, that these separate subsections of the statute in *Williams* "constituted independent bases for her removal." *Devore*, ¶ 25.

¶34 Returning to the statutory provision before the Court, we observe that there are many valid reasons for including the employer-employee relationship on the list of affiliations which will justify excusing a juror for cause. An employer could use her position of authority over a juror to influence his decision, whether directly or subtly. From the juror's perspective, there will be an underlying concern about the prospect of returning to work after trial and having to explain to his coworkers or boss why he may have disbelieved their testimony or rendered a verdict against them. Although this

14

prospective juror may feel constrained to declare his impartiality before his peers during voir dire and may also be fully well-intentioned, the pressures underlying his employment relationship with a party to the case will undoubtedly color his ability to act wholly without bias.

¶35   As a review of the subsections of § 46-16-115, MCA, establishes, in some instances it will be patently evident that a challenge for cause of a prospective juror must be granted.  For example, under subsection (2)(c), a prospective juror either has been a party adverse to the defendant in a civil action or has complained against the defendant in a criminal prosecution, or he has not; there is no middle ground. The same holds true for a person having served on a trial jury that tried another person for the offense charged or a related offense, or a person who served as a juror in a civil action brought against the defendant for the act charged as an offense.  Section 46-16-115(2)(e) and (g), MCA. Under other sections, however, deciding the propriety of a challenge for cause will not be so simple.

¶36   When it is not immediately apparent that a proposed juror falls squarely within one of the statutory proscriptions, the exercise of the district court's discretion will come into play.  The question of whether the juror is in the employment of the party on whose complaint the prosecution was instituted is a prime example.  Because § 46-16-115, MCA, is a rule of criminal procedure and the State of Montana is a party in every criminal case, situations will continue to arise where a prospective juror is employed in some capacity by the state.  Where the connection is indirect or tangential, as in *Radi* and *Richeson*, the parties and the court must be free to explore whether the association would

15

prevent the prospective juror from acting with impartiality and without prejudice to the rights of either party, as contemplated under subsection (2)(j). However, where—as here—the connection is direct and the prospective juror is in the employment of the person or agency on whose complaint the prosecution was instituted, the challenge for cause must be granted regardless of whether the potential juror claims he can be impartial.

¶37 Finally, it bears repeating that "when voir dire examination discloses a serious question about a juror's ability to be fair and impartial, that question should be resolved in favor of excusing that juror." *Williams*, 262 Mont. at 539, 866 P.2d at 1104.

¶38 In sum, we conclude that the District Court abused its discretion in failing to excuse Matteson for cause given his employment with DOJ DCI, and in accepting instead Matteson's assurance that despite his employment, he could be a fair and impartial juror. We therefore reverse and remand for new trial.

¶39 *Did the justice court abuse its discretion when it granted the State's motion in limine, prohibiting Kebble from presenting evidence to the jury regarding the circumstances surrounding suspension of his outfitters license?*

¶40 As we are remanding this case to District Court, we offer the following analysis as guidance to the court in the event of a new trial.

¶41 In Cascade County justice court Kebble sought to introduce evidence from his Carbon County proceeding but the State moved to exclude the evidence as irrelevant, confusing, and prejudicial. The Cascade County justice court agreed with the State that the drug case evidence would be confusing to the jury. The court also expressed concern that a drug conviction, followed by a failed drug test within weeks of the conviction,

would be "very troubling to the jury," and the court did not want the license proceeding "to be tainted by any unfairness to Mr. Kebble because of . . . the drug issue." The justice court, in an apparent attempt to protect Kebble from prejudice, determined that the jury would hear evidence that Kebble was a licensed outfitter until mid-2004 and that Kebble admitted that he did not have a valid license at the time he conducted the outfitting trips. The jury would not be entitled to hear that Kebble's license had been suspended.

¶42 On appeal, Kebble argues that the justice court improperly granted the State's motion in limine, which prohibited him from introducing "favorable" evidence from his Carbon County case pertaining to reinstatement of his license. He claims that the Carbon County proceeding and the Cascade County proceeding arose from the "same transaction," *i.e.*, the suspension of his outfitters license. Relying on § 26-1-103, MCA, Montana's "transaction rule," Kebble submits that for the jury to understand the context of his charges for outfitting without a license, the jury must understand how, when, and under what circumstances his license was suspended. Additionally, he claims that the evidence would inform the jury that had the Attorney General not wrongfully sought revocation of his deferred sentence, his license would have been restored in April 2005, before the first of his unlicensed outfitting excursions occurred in May 2005.

¶43 The State counters that the drug conviction in Carbon County which led to Kebble's license suspension was irrelevant under M. R. Evid. 401 to the Cascade County proceeding charging Kebble with conducting outfitting excursions without the required State license. The State argues that introduction of evidence of Kebble's drug conviction would have confused and misled the jury, and would have been prejudicial to Kebble.

17

Consequently, such evidence was inadmissible under M. R. Evid. 403. The State further maintains that determining whether Kebble was conducting outfitting excursions without a license did not require knowledge of the prior circumstances resulting in the suspension of his license.

¶44 Section 26-1-103, MCA, provides: "Where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction." In other words, evidence that may otherwise be inadmissible may be admitted if it regards "the circumstances, facts, and declarations which grow out of the main fact, which are contemporaneous with it and serve to illustrate its character." *State v. Beavers*, 1999 MT 260, ¶ 48, 296 Mont. 340, 987 P.2d 371. We further noted in *Beavers* that "[a]dmissibility is predicated on the jury's right to hear what transgressed immediately prior and subsequent to the commission of the offense charged, so that they may evaluate the evidence in the context in which the criminal act occurred." *Beavers*, ¶ 51. *See also Lamarr*, ¶ 17.

¶45 It is evident from *Beavers* that there is a contemporaneous component to the type of evidence that is potentially admissible under § 26-1-103, MCA. Here, there is no contemporaneous connection—Kebble's license suspension for drug possession occurred in June 2004 and he was charged for outfitting without a license in September 2007. Moreover, under the plain language of § 26-1-103, MCA, it is clear that the dispute in the Cascade County justice court proceeding does not involve "why" or under what

18

circumstances Kebble's license was suspended; rather, it involves whether Kebble was conducting outfitting excursions without a valid license.

¶46    Given that the evidence Kebble urged the court to admit is not admissible under § 26-1-103, MCA, and because the manner in which Kebble's earlier license suspension occurred is remote in time and irrelevant to a determination of whether he had a license at the time he conducted outfitting excursions, we conclude the justice court did not abuse its discretion is granting the State's motion in limine and precluding evidence of Kebble's Carbon County proceeding from being presented to the jury.

¶47    *Did the justice court err when it sentenced Kebble pursuant to the statute in effect at the time he committed the crime, rather than pursuant to the statute that was in effect at the time he was charged and convicted?*

¶48    Kebble claims that the justice court erred when it sentenced him pursuant to § 37-47-344, MCA (2005), the statute in effect at the time he committed the offenses, rather than § 37-47-344, MCA (2007), the revised statute in effect at the time he was charged and subsequently convicted. He asserts that the 2007 version of the statute eliminated jail time and made his offenses subject to a fine only. Kebble maintains that under *State v. Wilson*, 279 Mont. 34, 926 P.2d 712 (1996), he should receive the benefit of the reduced penalties set forth in the 2007 statute.

¶49    In *Wilson*, we adopted the rationale of the California Supreme Court and concluded that when a sentencing statute is repealed (or amended) between the date a defendant commits the underlying offense and the date of his sentence, the effect of the repeal (or amendment) is to lessen the defendant's punishment, and the new statute contains no savings clause, the defendant is entitled to be sentenced according to the

19

sentencing statute in effect on the date of sentencing. *Wilson*, 279 Mont. at 40, 926 P.2d at 716. Accordingly, had the Legislature actually reduced the punishment applicable to Kebble's crimes between the time he committed the offenses and the time he was sentenced, Kebble would have a valid argument. However, this is not the case.

¶50 Section 37-47-344, MCA (2005), stated in relevant part:

> (2) A person who represents to the public that the person is an outfitter or who purposely engages in outfitting without a license as required by this chapter is guilty of a misdemeanor and is publishable by a fine of not less than $200 and not more than $1,000, up to 1 year in the county jail, or both.

¶51 Section 37-47-344, MCA (2007), provides in pertinent part:

> (1) A person who violates any provision of this chapter or rule adopted under this chapter is guilty of a misdemeanor and is punishable, unless otherwise specified, by a fine not exceeding $500.

¶52 The State argues that Kebble cannot rely upon the 2007 version of § 37-47-344, MCA, because the 2007 Legislature moved the "outfitting without license" penalty provisions from § 37-47-344, MCA, to § 87-3-116(1) and (2), MCA. These 2007 provisions (repealed in 2011 when the Legislature reorganized and recodified the outfitting statutes) provided in relevant part:

> (1) A person commits the offense of outfitting without a license if the person purposely or knowingly engages in outfitting while not licensed pursuant to Title 37, chapter 47, or purposely or knowingly violates a licensing rule adopted under Title 37, chapter 47. A violation of this subsection is punishable by a fine of not less than $200 or more than $1,000, imprisonment in the county jail for up to 1 year, or both.

> (2) A person or entity that represents to any other person, any entity, or the public that the person or entity is an outfitter and who commits the offense of outfitting without a license, as provided in subsection (1), for any portion of 5 or more days for consideration within 1 calendar year for any person or for consideration valued in excess of $5,000 is punishable by a fine of not

20

more than $50,000, imprisonment in the state prison for up to 5 years, or both.

Section 87-3-116(1) and (2), MCA (2007).

¶53 While this Court did hold in *Wilson* that a defendant is entitled to the ameliorating effect of a change in law that occurs after commission of the crime but before sentencing, in this case the 2007 Legislature did not ameliorate or repeal the misdemeanor punishment for outfitting without a license; it merely shifted the penalty provisions to another title. Therefore, the 2007 statute and the cases upon which Kebble relies are inapposite. Because the penalty for Kebble's violations was not reduced by the Legislature between 2005 and 2007, the justice court did not err in sentencing Kebble. The sentence was legal under the applicable sentencing statutes and the justice court did not abuse its discretion.

## CONCLUSION

¶54 For the foregoing reasons, we reverse the decision of the justice court and District Court as they pertain to juror Matteson and remand for a new trial.

/S/ PATRICIA COTTER

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT

21

Justice Jim Rice, dissenting.

¶55    The Court's challenge in interpreting § 46-16-115, MCA, "logically," Opinion, ¶ 32, is that the statute is not written logically.  Section 46-16-115(2), MCA, instructs that a juror may be challenged for cause for 1) "all" of the enumerated listing of categories, 2) "any" of the enumerated listing of categories, or 3) "for any other reason that the court determines."  I have a difficult time imagining a juror who could be challenged for "all" of the listed categories, but, nonetheless, the statute contemplates such an overlapping challenge.   The further authorization to excuse a juror "for any other reason it determines" demonstrates the very broad discretion the Legislature intended to grant the trial judge.  My reading of this operative language convinces me that the enumerated listing of categories is neither an exhaustive list nor a mandatory one, but rather an initial list of circumstances that are appropriate grounds for a challenge, subject to the court determining, after trial of the challenge, that it is appropriate to excuse the juror under the generally applicable standards testing bias and prejudice.

¶56    Certainly, most of these categories present a compelling reason to dismiss a juror, but not all of them are obvious.  If a juror expresses a "belief that the punishment fixed by law is too severe for the offense charged," § 46-16-115(2)(i), MCA, the next question in voir dire would be whether the juror could set aside that belief and decide the case in accordance with the law given by the judge, particularly in view of the fact that the jury will not determine the punishment. *See State v. Cudd*, 2014 MT 140, ¶ 9, 375 Mont. 215, 326 P.3d 417 (In voir dire, "the critical inquiry is whether a prospective juror can

22

convincingly affirm his or her ability to lay aside any misgivings and fairly weigh the evidence.").

¶57 The same is true for the challenge at issue here. As the Court notes, Matteson was indeed "in the employment of" the person on whose complaint the prosecution was instituted because he also worked for the State of Montana. Section 46-16-115(2)(b), MCA. Thus, Matteson fit within a statutory category. Under the Court's interpretation of the statute, Matteson should be disqualified from serving as a juror. However, in a concession that undermines its analysis, the Court holds that not all employees of the State are subject to dismissal for that reason alone, but, rather, are subject to the trial court's exercise of discretion. Opinion, ¶ 36. This demonstrates that the statute's listing provides circumstances that are appropriate bases for a challenge, but nonetheless require the trial court's discretionary determination of bias. I fear that we engender significant confusion by inserting such operative terms as "patently evident," "middle ground," and "immediately apparent" into the application of the listing of categories. Opinion, ¶¶ 35-36.

¶58 My position is contrary to the statement made by this Court in *Thomson*, where we said "[i]t is clear then that, unless the juror falls within one of the categories of [§ 46-16-115(2), MCA], he will not be removed for cause without a showing of partiality." *State v. Thomson*, 169 Mont. at 165, 545 P.2d at 1073. However, this statement was dictum and was made with no analysis. I would hold that this bare statement in *Thomson* is not binding and that the plain language requires as explained above.

¶59 Believing that the language of the statute places all challenges within the discretion of the trial court, I would affirm the conviction on the basis that the District Court did not abuse its discretion.

/S/ JIM RICE

Justice Beth Baker joins in the dissenting Opinion of Justice Rice.

/S/ BETH BAKER