Justice Beth Baker delivered the Opinion of the Court.
***350 ¶1 Christy A. Bockman-Fryberger drove her vehicle into the back of a slow-moving, front-end loader on U.S. Highway 93, south of Ronan, on a January night. The loader was owned and operated by the Montana Department of Transportation (MDOT). Bockman-Fryberger ***351 filed suit against the State to recover damages for injuries sustained in the collision. A Lewis and Clark County jury found Bockman-Fryberger fifty-one percent at fault in the accident. On appeal, Bockman-Fryberger argues that the District Court violated the law when it refused to strike for cause a juror who was a state employee. We affirm and do not reach the State's cross-appeal.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 Shortly before 10 p.m. on January 21, 2016, Greg Fryberger, an employee of MDOT, finished clearing snow berms with a front-end loader on an intersection of U.S. Highway 93.[1] He was working about ten miles north of the MDOT shop where the loader normally was kept. After finishing his work, Fryberger began driving back to the MDOT shop to return the loader. It was five hours after sunset, and the road was dark. Fryberger had the top light, flashers, and headlights of the loader on, and the vehicle had a "slow-moving" placard on it. The loader was driving about fifteen to twenty miles per hour. As Fryberger drove the front loader down Highway 93, Bockman-Fryberger, who was driving sixty-two miles per hour, rear-ended the loader. She was injured in the collision.
¶3 Bockman-Fryberger sued the State for its employee's negligent actions and its failure to have a policy prohibiting the operation of a loader on a public highway at night, its failure to ensure the loader was equipped with lights compliant with statutory requirements, and its failure to properly train or supervise the driver of the front-loader. The State's theory at trial was that Bockman-Fryberger's negligence caused the collision and her injuries: the loader's lights and reflectors were visible and, despite having ample time to slow down, she made no attempt to reduce her speed as she approached the loader.
¶4 During jury selection, Bockman-Fryberger moved to have all state employees removed from the jury for cause pursuant to § 25-7-223(3), MCA, which allows challenges for cause when a juror "stand[s] in the relation of ... employer and employee ... to either party." Bockman-Fryberger withdrew the motion after the District Court agreed that she could challenge individual jurors during voir dire under the provision.
¶5 Bockman-Fryberger challenged two potential jurors, Eugene Betz and Steven Haynes, for cause under § 25-7-223(3), MCA, due to their employment with the State. Betz *603 works for the Montana Highway ***352 Patrol Division in Helena. During voir dire, Betz stated that he knew many state employees, including his two ex-wives and his best friend. He also stated that he had formed a "close relationship" with the current director of MDOT, Mike Tooley, when Tooley was chief of the Highway Patrol; he added that they "don't run in the same circles, but [do] say hello." The District Court overruled both challenges. Bockman-Fryberger used her peremptory challenges to remove state employees from the jury, including Betz. Four state employees, including Haynes, remained on the jury. On appeal, Bockman-Fryberger challenges the District Court's refusal to grant her challenge for cause of Betz. She does not separately challenge Haynes's service on the jury.
STANDARD OF REVIEW
¶6 We review a court's refusal to dismiss a juror for cause for an abuse of discretion. Reff-Conlin's Inc. v. Fireman's Fund Ins. Co. , 2002 MT 60, ¶ 16, 309 Mont. 142, 45 P.3d 863. "We will reverse the judgment and order a new trial if a court abuses its discretion by denying a defendant's challenge for cause, the defendant removes the challenged prospective juror with a peremptory challenge, and the defendant exhausts his peremptory challenges." State v. Kebble , 2015 MT 195, ¶ 15, 380 Mont. 69, 353 P.3d 1175.
DISCUSSION
¶7 Bockman-Fryberger argues that the District Court abused its discretion when it refused to excuse Betz for cause under § 25-7-223(3), MCA, due to his employment with the State. She argues that the statute establishes certain relationships between a potential juror and a party that create an implied bias, requiring the court to excuse the juror for cause if either party raises a challenge. Alternatively, Betz should have been excused for cause when voir dire established that he had extensive relationships with other state employees and knew the director of MDOT. Bockman-Fryberger maintains that she is entitled to a new trial because she was presumptively prejudiced when she had to use one of her peremptory challenges to excuse Betz and she used all of her remaining peremptory challenges. See Kebble , ¶ 15.
¶8 Section 25-7-223, MCA, governs challenges for cause in civil cases. It states in relevant part, "Challenges for cause may be taken on one or more of the following grounds: ... standing in the relation of ... employer and employee ... to either party." Section 25-7-223(3), MCA. We have not interpreted previously whether § 25-7-223(3), MCA, proscribes state employees from sitting on a jury in a civil case to which the State is a party. In Reff-Conlins Inc. , we determined that the ***353 "debtor and creditor" language in the same subsection proscribed the president of a party's creditor bank from sitting on the jury because "there is no substantive difference between the Chief Executive Officer of a creditor who is responsible for the creditor's success and the creditor itself when it comes to impartiality and jury duty. To hold otherwise would exalt form over substance." Reff-Conlin's Inc. , ¶ 21.
¶9 Outside the civil arena, we have addressed similar language in the statute governing challenges for cause in criminal cases. See Kebble , ¶¶ 18-38. We find the analysis in Kebble instructive. Section 46-16-115, MCA, states in pertinent part, "A challenge for cause may be taken for ... being ... in the employment of ... the person ... on whose complaint the prosecution was instituted." Section 46-16-115(2)(b), MCA. We have interpreted "person" in the statute to include governmental entities. See Kebble , ¶ 26.
¶10 In Kebble , we explained that for-cause challenges to state employees should not be categorically sustained. Kebble , ¶¶ 32-36. We determined that it was instead proper for the district court to explore whether the state employee had a state of mind that might prevent him from acting with entire impartiality. We explained that the purpose of the statutes governing for-cause challenges "is to eliminate from the jury pool for cause someone who, due to an employment relationship or a personal relationship, past experience, or direct personal knowledge ... cannot logically be expected to set aside her resulting state of mind and act with entire impartiality." Kebble , ¶ 32. Given this purpose, we determined it proper to examine whether "a proposed juror falls squarely within one of the statutory proscriptions." Kebble , ¶ 36. We *604 observed that for some relationships there will be "no middle ground," and removal for cause "will be patently evident." Kebble , ¶ 35. For other relationships, a district court must examine the challenged connection and determine whether it is "indirect and tangential" to the litigation. Kebble , ¶ 36. We explained that "the parties and the court must be free to explore whether the association would prevent the prospective juror from acting with impartiality and without prejudice to the rights of either party." Kebble , ¶ 36.
¶11 We held that the district court abused its discretion when it refused to strike for cause a juror who was employed by the agency that had conducted a key part of the investigation and that employed one of the State's principal witnesses. The prospective juror "was clearly in the employment of the very department and division that was involved in the prosecution." Kebble , ¶ 31. We differentiated State v. Thomson , 169 Mont. 158, 545 P.2d 1070 (1976), which held that the ***354 district court did not abuse its discretion when it refused to strike a state employee who worked in a capacity wholly unrelated to the issues in the case.
¶12 Just like § 46-16-115, MCA, the purpose of § 25-7-223, MCA, "is to eliminate from the jury pool for cause someone who, due to an employment relationship or a personal relationship, past experience, or direct personal knowledge of the [case or party], cannot logically be expected to set aside her resulting state of mind and act with entire impartiality." Kebble , ¶ 32. And just like § 46-16-115, MCA, its civil counterpart identifies certain relationships for which "it will be patently evident that a challenge for cause of a prospective juror must be granted." Kebble , ¶ 35. For example, "having served as a juror or been a witness on a previous trial between the same parties for the same cause of action" will establish cause to exclude a prospective juror from service. Section 25-7-223(4), MCA. Reff-Conlin's Inc. suggests that other relationships set forth in the statute may call for further examination, rather than mechanical application of the statute that "exalt[s] form over substance." Reff-Conlin's Inc. , ¶ 21.
¶13 Under both statutes, the role of the district court is to hear the challenges raised by the parties and to exercise its discretion in determining whether to exclude a prospective juror. First enacted in 1967, § 46-16-115(1), MCA, clearly states this role: "Each party may challenge jurors for cause, and each challenge must be tried by the court." Although § 25-7-223, MCA, more simply states that "challenges for cause may be taken," the difference is a matter of drafting style reflecting the statute's vintage. Montana's Territorial Legislature first enacted in 1864 what is now codified as § 25-7-223, MCA. The modern statute remains largely unchanged from its original form. An early decision from this Court held that the statute requires the parties to raise challenges and the district court to try each challenge raised before making its determination. Ruff v. Rader , 2 Mont. 211, 217 (1874). Under both statutes, the trial court "exercises its discretion in the matter of passing upon the qualifications of a juror, and its determination will not be disturbed unless there has been an abuse of that discretion." Simons v. Jennings , 100 Mont. 55, 61, 46 P.2d 704, 707 (1935) ; see also Thomson , 169 Mont. at 164, 545 P.2d at 1073 (holding that when the court "does not ... remov[e] a juror for cause when a challenge is made, this Court may reverse a conviction only where there is demonstrated a clear abuse of discretion").
¶14 Although there are some differences in the statutes' language regarding an employment relationship, those differences are explained by the fact that the State is a party in every criminal case. The ***355 criminal statute is worded plainly to reflect that the State's party status does not automatically exclude from the jury every state employee. In Kebble , this Court interpreted "in the employment of the person [or entity] upon whose complaint the prosecution was instituted" to require a showing that the prospective juror's employment would be likely to create a bias against the challenging party. Kebble , ¶¶ 30-31.
¶15 We conclude that Section 25-7-223(3), MCA, likewise does not automatically exclude all challenged state employees from sitting on juries when the State is a party to *605 a civil case. Instead, "standing in the relation of employer and employee to either party" requires a connection between the prospective juror's state employment and the litigation at issue that would logically call into question his ability to be entirely impartial. For example, if a prospective juror were in the employment of the state agency whose actions or policies are at issue in the litigation, then the connection would be direct. In such cases, the challenge for cause must be granted, regardless of whether the potential juror claims she can be impartial. The statute, however, does not categorically exclude state employees who work in capacities wholly unrelated to the events, departments, or policies at issue. See Kebble , ¶ 31 ; Thomson , 169 Mont. at 165, 545 P.2d at 1073. In considering a challenge, "the widest possible examination should be allowed such person in his examination as a potential juror, and should there be any doubt in the event of a challenge for cause, the trial court should resolve the doubt in favor of allowing the challenge." State v. Radi , 176 Mont. 451, 460, 578 P.2d 1169, 1175 (1978).
¶16 Bockman-Fryberger argues that the policy considerations against allowing state employees to serve on juries in cases in which the State is a party are stronger in civil cases than in criminal cases. She suggests that if state employees are not categorically excluded, then employees of any large corporation cannot be categorically excluded either. We reject the premise that State employees are situated the same as employees of a large corporation. The State is not a for-profit entity seeking to please its investors. Bockman-Fryberger also postulates that state employees may fear that a damage award against the state could lead to budget shortfalls and furloughs, or that a state employee may fear setting precedent that could lead to him getting sued for negligence. In Kebble , we acknowledged:
that there are many valid reasons for including the employer-employee relationship on the list of affiliations which will justify excusing a juror for cause. An employer could use her position of authority over a juror to influence his decision, whether directly ***356 or subtly. From the juror's perspective, there will be an underlying concern about the prospect of returning to work after trial and having to explain to his coworkers or boss why he may have disbelieved their testimony or rendered a verdict against them. Although this prospective juror may feel constrained to declare his impartiality before his peers during voir dire and may also be fully well-intentioned, the pressures underlying his employment relationship with a party to the case will undoubtedly color his ability to act wholly without bias.
Kebble , ¶ 34. We determined in Kebble , however, that these reasons may not apply when the prospective juror is employed by the State in a capacity wholly unrelated to the litigation at hand. Rather, the District Court must make determinations of bias based on the prospective juror's answers during voir dire. See Kebble , ¶ 37. Similarly, that a jury's award of damages against the State could impact an individual employee's job security is too attenuated a leap to require automatic exclusion of all government workers. Every Montana taxpayer could share a concern about the public fisc. All of those concerns may be brought out through questioning of the prospective juror during voir dire.
¶17 Reviewing the facts of the instant case, Betz was not employed by MDOT, whose actions and policies were at issue. He was employed by the Montana Highway Patrol, at its command center in Helena-many miles away from the location of the collision. Although he knew the director of MDOT personally, the two were no longer in a supervisor/subordinate relationship. Betz did not have an employment relationship with the State that required his exclusion under § 25-7-223(3), MCA. We hold that the District Court did not abuse its discretion by denying Bockman-Fryberger's challenge for cause on that ground.
¶18 Bockman-Fryberger's contention that Betz should have been removed for cause due to his relationships with multiple state employees also fails. None of these relationships come within the statute's proscriptions. The challenge thus invokes § 25-7-223(7), MCA, under which Bockman-Fryberger must show that Betz possessed a "state of mind ... evincing enmity against or bias in favor of either party." A district court *606 abuses its discretion under § 25-7-223(7), MCA, if it does not grant a challenge for cause when "presented [with] the strong possibility of bias in favor of [a] party." Harris v. Hanson , 2009 MT 13, ¶ 22, 349 Mont. 29, 201 P.3d 151.
¶19 The record shows that the District Court did not abuse its discretion. Betz acknowledged his acquaintance with MDOT Director ***357 Tooley, clarifying that they did not "run in the same circles, but [would] say hello" when they saw each other around town. He stated he had no reservations about his ability to be impartial and that he "absolutely" would be able to sit with an open mind and listen to the evidence and render a verdict against the State. Betz repeatedly answered during voir dire that he could be impartial, and Bockman-Fryberger fails to demonstrate how knowing other state employees exhibits a "strong possibility of bias" in favor of the State.
¶20 As we stated in State v. Richeson , "It must be remembered that the purpose of voir dire is not only to establish grounds to dismiss a juror for cause, but also to enable counsel to intelligently exercise peremptory challenges." State v. Richeson , 2004 MT 113, ¶ 29, 321 Mont. 126, 89 P.3d 958. Bockman-Fryberger was "free to explore whether [Betz's] association would prevent [him] from acting with impartiality and without prejudice to the rights of either party." Kebble , ¶ 36. Betz's answers indicated his ability to judge the case fairly. The District Court did not abuse its discretion by denying Bockman-Fryberger's challenge for cause.
CONCLUSION
¶21 The District Court is affirmed.
We concur:
JIM RICE, J.
LAURIE McKINNON, J.
JAMES JEREMIAH SHEA, J.
INGRID GUSTAFSON, J.

Fryberger is a cousin of Bockman-Fryberger's ex-husband.