**FILED**

12/23/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0428

DA 23-0428

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 296

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ASIA CARL SOAPES,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC-21-1001
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Scotti L. Ramberg, Peace Law Group, LLC, Missoula, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

          Scott Twito, Yellowstone County Attorney, Arielle Dean, Hallie
Bishop, Deputy County Attorneys, Billings, Montana

          Submitted on Briefs:  October 1, 2025

          Decided:  December 23, 2025

Filed:

      _____
                  Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Defendant and Appellant Asia Carl Soapes (Soapes) appeals from the June 29, 2023 Judgment issued by the Thirteenth Judicial District Court, Yellowstone County, following his conviction for one count of felony sexual assault and three counts of felony sexual intercourse without consent after a February 8-10, 2023 jury trial.

¶2 We address the following restated issues on appeal:

1. *Should this Court address the District Court's denial of the State's implied mid-trial motion to strike a Yellowstone County Undersheriff as a juror under the plain error doctrine?*

2. *Should this Court address Soapes's claim related to the joinder of offenses under the plain error doctrine?*

3. *Whether Soapes received ineffective assistance of counsel.*

¶3 We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4 In 2021, C., Soapes's adopted daughter, who was then 14 years old, disclosed to a friend that she had been repeatedly molested by Soapes since she was 10 years old. That friend's mother made an anonymous report to the Montana Department of Public Health and Human Services, Child and Family Services Division (Department), on June 3, 2021. The Department, the Yellowstone County Sheriff's Office (YCSO), and the Billings Police Department investigated the report, including conducting forensic interviews of both C. and T., Soapes's natural daughter with his then-wife, and C.'s mother, Christina Hazen.[1]

---

[1] At the time known as Christina Soapes. For clarity, we refer to her as Christina throughout this Opinion.

C. informed the forensic interviewer that Soapes began sexually touching her when she was 10, beginning with using his fingers to touch her vagina and eventually progressing to Soapes penetrating her with his penis as she got older. Soapes was also interviewed regarding the allegations and admitted to cuddling with C., but denied being naked or touching her inappropriately. On July 28, 2021, the State filed an Information charging Soapes with one count of felony sexual assault and two counts of felony sexual intercourse without consent (SIWOC) for molesting C. Soapes was arrested the next day.

¶5      Shortly after Soapes was arrested, S.B., Christina's younger sister, contacted the Billings Police Department to advise that she had been molested by Soapes in early 2009, when she was 17. S.B. informed the police that she had been visiting Soapes and Christina, who was then pregnant with T., and had fallen asleep on their couch when she was awakened by Soapes sticking his hand down her pants and using his finger to penetrate her vagina. S.B. faked being sick and then left the house. S.B. informed Christina and their parents about the incident shortly after it happened. When confronted at the time, Soapes admitted he had been inappropriate with S.B., but claimed it was consensual and that he had been intoxicated. Neither S.B. nor any of the family members who had been told reported the incident to the police in 2009, but S.B. did stop staying the night at Christina and Soapes's home. The State filed an Amended Information, adding one count of felony SIWOC for the 2009 incident with S.B., on December 17, 2021. Soapes did not object to the amendment and did not move to sever the charges.[2]

---

[2] The State filed a Second Amended Information on January 30, 2023, which clarified the possible penalties of the charges faced by Soapes. Once again, Soapes did not object to this amendment or

¶6     The matter proceeded to a jury trial on February 8-10, 2023.  A member of the prospective jury panel was Yellowstone County Undersheriff Bofto, who was wearing his uniform.  The parties conducted voir dire, where both the State and Soapes questioned Bofto regarding his employment and ability to be impartial.  Soapes also specifically questioned Bofto regarding his previous investigations of sexual assault allegations:

> Does everybody else understand that sometimes allegations aren't true? Does anybody believe that every rape allegation is true?  Does everybody believe that potentially somebody could say I was raped and it not be true? Does everybody agree with that?  Bofto, you have investigated these; correct?
>
> A.  Yes.
>
> Q.   Did you ever have a person allege[] that they had been sexually assault[ed] and it turned to be not true?
>
> A.  Yes.
>
> Q.  And that didn't surprise you, did it?
>
> A.  No.
>
> Q.  'Cause that happens?
>
> A.  Yes.

Both the State and Soapes passed the jury for cause and neither exercised a peremptory strike on Undersheriff Bofto, who was then seated as a juror.

¶7     At trial, the jury heard the testimony of C., who testified to being repeatedly molested by Soapes over a period of years; T., who among other things, testified to walking in on Soapes tickling a naked C. on her bed; Christina; Dr. Cynthia Brewer, who conducted

---

move to sever the charges.

4

a sexual assault examination of C., and noted C.'s hymen "had three deep notches at three o'clock, eight o'clock and ten o'clock positions" which were "indicative of trauma" from sexual assault; Yellowstone County Sheriff's Deputy Mike Kelso; former Yellowstone County Sheriff's Deputy Troy Charbonneau; Child Protection Specialist Julie Peterson; Dr. Wendy Dutton, a blind expert in the area of child sexual abuse; Billings Police Department Officer Ryan Donovan; Billings Police Department Detective Sergeant Shane Winden; Brandi Hazen, Christina and S.B.'s mother; S.B., who testified regarding the 2009 incident; and Soapes.

¶8 On the morning of the second day of trial, Deputy Kelso testified regarding his investigation into C.'s claims after the Department referred the case to the YCSO, which included speaking with both Soapes and Christina. Following the State's direct examination, Soapes conducted his cross-examination of Deputy Kelso, during which the following exchange occurred:

Q. Nervous testifying in front of your boss?

A. Sure, of course. Wouldn't you be?

Soapes thereafter continued with his cross-examination of Deputy Kelso. Following CPS Peterson's testimony and a lunch recess, the State asked to be heard by the District Court outside of the presence of the jury and noted that Deputy Kelso's relationship with Undersheriff Bofto had been highlighted by Soapes's counsel during his questioning and "highlighted the possibility that the juror, Mr. Bofto, may not be able to be fair an[d] impartial." The State noted it believed Undersheriff Bofto's relationship with the YCSO

would have been grounds for a for-cause removal pursuant to § 46-16-115, MCA, "had Defense or the State asked for that," and highlighted *State v. Kebble*, 2015 MT 195, 380 Mont. 69, 353 P.3d 1175, noting that this Court reversed a jury verdict "based on a DCI agent sitting on a jury where DCI was part of the investigation and DCI agents testified." In response, counsel for Soapes noted Undersheriff Bofto "wore his uniform during voir dire" and that, while there was a relationship with the YCSO, "neither of us argued to remove him for cause. And neither of us exercised [a] peremptory challenge." Soapes concluded that "I don't think there are any concerns, at least not from the Defense, Your Honor." The District Court noted that Undersheriff Bofto's relationship was plainly evident from the moment "Juror Bofto raised his hand every time it was asked whether he knew a witness, whether he knew any of the deputies," but he "was asked whether or not it would make a difference in his deliberations and he said no." The court stated it believed there would have been legal cause to strike Undersheriff Bofto from the panel, "but they didn't. Nobody did." The court also appeared to distinguish the situation from that of *Kebble*, noting that DCI is a "special small group of investigators . . . I can see where there would be some concern with respect to that. But here, Bofto who is the undersheriff of everybody and we all knew that in the very beginning, we knew that when he first took his seat." The District Court again stated that the parties had the opportunity to remove Bofto during voir dire, but "both counsel agreed he can be fair and impartial and nobody removed," before ultimately informing the parties that "[i]f that was a motion to strike, it

6

is denied at this time." On the morning of the third and final day of trial, the District Court circled back to the Undersheriff Bofto matter:

> THE COURT: Very good. Then next let's take up Bofto. Does anybody wish to renew their position on -- the State wish to renew their position on Undersheriff Bofto?
>
> MS. DEAN: No, Your Honor. I think the record that was made yesterday was sufficient.
>
> THE COURT: Very good. One comment about that, Mr. Merchant, you will not comment about the relationship between any of the officers and Bofto during closing.
>
> MR. MERCHANT: Absolutely. I apologize for that previous statement, Your Honor.

Soapes then testified, denying C.'s allegations and asserting his sexual contact with S.B. in 2009 was consensual. He was convicted by the jury on all four counts and sentenced to 100 years at the Montana State Prison by the District Court.

¶9 Soapes appeals. Additional facts will be discussed as necessary below.

## STANDARD OF REVIEW

¶10 We generally do not address issues raised for the first time on appeal, but may discretionally review unpreserved claims alleging errors implicating a criminal defendant's fundamental rights under the common law plain error doctrine. *State v. George*, 2020 MT 56, ¶ 4, 399 Mont. 173, 459 P.3d 854 (citations omitted).

¶11 Ineffective assistance of counsel claims are mixed questions of fact and law that are reviewed de novo. *State v. Ward*, 2020 MT 36, ¶ 15, 399 Mont. 16, 457 P.3d 955

7

(collecting cases). We will review ineffective assistance of counsel claims on direct appeal if the claims are based solely on the record. *Ward*, ¶ 15.

## DISCUSSION

¶12 *1. Should this Court address the District Court's denial of the State's implied mid-trial motion to strike a Yellowstone County Undersheriff as a juror under the plain error doctrine?*

¶13 On appeal, Soapes asserts the State's comments regarding Undersheriff Bofto on the second day of trial both constituted a motion to strike Undersheriff Bofto and that motion should have been granted by the District Court. Soapes did not object to Bofto serving as a juror below and, to the extent the State raised the issue mid-trial, affirmatively argued against dismissing Bofto as a juror. Soapes now contends this Court should review his claim he did not have an impartial jury due to the presence of Bofto pursuant to the plain error doctrine.

¶14 A defendant's failure to contemporaneously object to an asserted error generally constitutes a waiver of the right to seek appellate review. *See* §§ 46-20-104(2) and -701(2), MCA. "However, as a narrow exception to the waiver rule, we may, in our discretion, review an unpreserved assertion of error under the common law plain error doctrine upon an affirmative showing of: (1) a plain or obvious error; (2) that implicates a constitutional or other substantial right; and (3) which will, if not corrected, result in a manifest miscarriage of justice or otherwise prejudicially undermine the fundamental fairness of the proceeding or compromise the integrity of the judicial process." *State v. Miller*, 2022 MT 92, ¶ 10, 408 Mont. 316, 510 P.3d 17 (collecting cases). We have noted that the correction

8

of an unpreserved error as plain error "fundamentally requires a showing . . . that the asserted error was indeed plain, and in fact resulted in substantial prejudice to the accused." *Miller*, ¶ 10 n.2 (internal citations omitted; collecting cases).

¶15 Soapes asserts the District Court should have struck Undersheriff Bofto for cause when the State raised the issue midway through the second day of trial. We review a court's decision to deny a challenge for cause of a juror for an abuse of discretion. *Kebble*, ¶ 14. "The right to an impartial jury is guaranteed by the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution." *State v. Grant*, 2011 MT 81, ¶ 10, 360 Mont. 127, 252 P.3d 193. "To safeguard this important right, the Legislature enacted § 46-16-115(2)(a)-(j), MCA, setting forth ten reasons a party to a criminal trial may challenge a juror for cause. The statute also provides that the trial judge may consider 'any other reason' that may indicate partiality or bias on the part of a prospective juror." *Kebble*, ¶ 22. Like in *Kebble*, § 46-16-115(1), and (2)(b) and (j), MCA, are potentially relevant to the present case and provide:

> (1) Each party may challenge jurors for cause, and each challenge must be tried by the court.
>
> (2) A challenge for cause may be taken for all or any of the following reasons or for any other reason that the court determines:
>
> .  .  .
>
> (b) standing in the relation of guardian and ward, attorney and client, master and servant, landlord and tenant, or debtor and creditor with or being a member of the family or in the employment of the defendant or the person who is alleged to be injured by the offense charged or on whose complaint the prosecution was instituted; [or]

9

.  .  .

(j) having a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party.

¶16 In this case, both the State and Soapes conducted a full voir dire of Undersheriff Bofto, who was in full uniform, and specifically addressed both his employment with the YCSO (which, in conjunction with the Department and Billings Police, investigated the case) and his ability to be impartial. Neither party challenged Bofto for cause or exercised a peremptory challenge on him. After Soapes's counsel asked, unprompted, whether Deputy Kelso was "nervous" about testifying in front of his "boss" during the second day of trial, the State raised the potential issue of Undersheriff Bofto's impartiality to the District Court. The State noted that it believed it would have been appropriate to remove Bofto for cause pursuant to § 46-16-115, MCA, and/or *Kebble*, if either the State or Soapes had sought such during voir dire. Soapes then argued against dismissing Bofto, recalling that Bofto appeared in full uniform for voir dire and both parties agreed he could be impartial after questioning. The District Court recounted that both parties passed Bofto for cause and determined that "[i]f that was a motion to strike, it is denied at this time."

¶17 In the proceedings below, Soapes did not challenge Undersheriff Bofto for cause. In fact, no party explicitly made a motion to strike Bofto at any point in the proceedings. The State implicitly made such a motion during the second day of trial, which Soapes argued against. Soapes's appellate challenge to Bofto serving as a juror is therefore unpreserved and waived for appellate review unless we discretionarily determine to review

10

it under the plain error doctrine. *George*, ¶ 4. To qualify for plain error review, Soapes must affirmatively demonstrate Bofto serving on the jury is a plain error, implicates his fundamental rights, and would, "if not corrected, result in a manifest miscarriage of justice or otherwise prejudicially undermine the fundamental fairness of the proceeding or compromise the integrity of the judicial process." *Miller*, ¶ 10.

¶18 As the right to a fair and impartial jury is a fundamental constitutional right, *Grant*, ¶ 10, Soapes meets the second prong of the plain error test. Undersheriff Bofto serving on the jury, when employed by the YCSO which was, in part, responsible for investigating the charges Soapes faced is likely also a plain and obvious error under the first prong of the plain error test. *See Kebble*, ¶ 36 (determining when "the connection is direct and the prospective juror is in the employment of the person or agency on whose complaint the prosecution was instituted, the challenge for cause must be granted regardless of whether the potential juror claims he can be impartial"). Where Soapes's plain error claim fails, however, is on the third prong of the test as we are not convinced failing to review his claim would "result in a manifest miscarriage of justice or otherwise prejudicially undermine the fundamental fairness of the proceeding or compromise the integrity of the judicial process." *Miller*, ¶ 10.

¶19 Had Soapes sought to challenge Undersheriff Bofto for cause and that challenge was denied, Soapes may have had a plausible argument, pursuant to the reasoning we articulated in *Kebble*, that the District Court abused its discretion by denying the challenge. But that is not what happened here. Soapes passed Bofto for cause during voir dire after

11

questioning him about whether he had ever dealt with false sexual assault allegations in his employment at the YCSO. When given a second chance to object to Bofto serving as a juror when the State implicitly raised the issue on the second day of trial, Soapes again argued in favor of keeping Bofto on the jury. Counsel's questions to Bofto indicate his strategic reasons why Soapes may have wanted Undersheriff Bofto on his jury. Soapes's affirmative actions to keep Bofto on the jury, even if he could have been challenged for cause, *see Kebble*, ¶ 36, make it clear that failing to review an unpreserved (and never made) challenge to Bofto's jury service would not result in a manifest miscarriage of justice, prejudicially undermine the fundamental fairness of the proceeding, or compromise the integrity of the judicial process. *Miller*, ¶ 10. As such, we decline to exercise our discretion to review Soapes's appellate claim regarding Bofto under the plain error doctrine.

¶20   2. *Should this Court address Soapes's claim related to the joinder of offenses under the plain error doctrine?*

¶21   Soapes also asserts the charges regarding C. and those regarding S.B. were improperly joined together. Once again, Soapes did not object to their joinder or move to sever the charges during the proceedings below and must affirmatively demonstrate this court should review his newfound objection pursuant to the plain error doctrine.

¶22   "A criminal defendant seeking to sever counts into separate trials has the burden of proving either that the counts were misjoined under § 46-11-404(1), MCA, or, if joinder was proper, that severing the counts under § 46-13-211(1), MCA, is necessary to prevent unfair prejudice." *State v. Southern*, 1999 MT 94, ¶ 14, 294 Mont. 225, 980 P.2d 3

12

(collecting cases).  We review whether counts in a charging information were properly joined de novo and the denial of a motion to sever charges based on unfair prejudice for abuse of discretion.  *State v. Kirk*, 2011 MT 314, ¶ 10, 363 Mont. 102, 266 P.3d 1262 (citations omitted).

¶23   The joinder of offenses is permissible when those offenses are "of the same or similar character or are based on the same transactions connected together or constituting parts of a common scheme or plan."  Section 46-11-404(1), MCA.  "Some factors used to consider whether counts in an information are 'of similar character' include whether the charges are brought under the same statute; whether the charges involve similar victims, locations, or modes of operation; the time frame within which the charges occurred; and the geographical area within which the charges occurred."  *Kirk*, ¶ 13 (citing *State v. Freshment*, 2002 MT 61, ¶ 22, 309 Mont. 154, 43 P.3d 968).  A defendant asserting charges should be severed based on unfair prejudice faces a "substantial" burden.  *Kirk*, ¶ 13.  "It is not sufficient for a criminal defendant to prove that he will face some prejudice as a result of a joint trial, or that he stands a better chance of acquittal if separate trials are held.  Rather, a criminal defendant must prove that the prejudice is so great as to prevent a fair trial."  *State v. Riggs*, 2005 MT 124, ¶ 34, 327 Mont. 196, 113 P.3d 281 (citing *Southern*, ¶ 29).

¶24   Because Soapes never objected to the joinder of offenses or moved to sever the charges, review could only occur under the plain error doctrine and he must affirmatively demonstrate "(1) a plain or obvious error; (2) that implicates a constitutional or other

13

substantial right; and (3) which will, if not corrected, result in a manifest miscarriage of justice or otherwise prejudicially undermine the fundamental fairness of the proceeding or compromise the integrity of the judicial process." *Miller*, ¶ 10. Soapes has failed to make such a demonstration in this case.

¶25 Regarding the charges themselves, Soapes was charged with sexual intercourse without consent for his actions with both C. and with S.B. Both victims were young female relatives of his then-wife, Christina. Both victims were sexually assaulted in the home Soapes shared with Christina. One consideration which would likely counsel in favor of severing the charges was the approximately eight-year gap between when Soapes sexually assaulted S.B. to when he first started molesting C. Reviewing the relevant considerations as a whole, though, it is apparent that joinder of these offenses was permissible under § 46-11-404(1), MCA. Nor has Soapes demonstrated he faced prejudice so great as to prevent a fair trial. *Riggs*, ¶ 34. Pursuant to our case law:

> There are three ways prejudice can be demonstrated to show the necessity of severing multi-charge trials. *Southern*, ¶ 30. First, an accumulation of evidence may lead the jury to the conclusion that the defendant is a bad person who must be convicted of something. Second, a jury might use evidence of guilt on one count to convict on another count, even though that evidence would be inadmissible in a separate trial on the latter count. Third, the defendant may suffer prejudice by wanting to testify on one count, but remain silent on another. *Southern*, ¶ 30. An abuse of discretion occurs where the district court fails to properly weigh these three forms of prejudice against the judicial economy resulting from a joint trial.

*Kirk*, ¶ 17.

¶26 Soapes has not demonstrated the type of prejudice which would have necessitated severing trial in this case. While C.'s allegations were partially corroborated by physical

evidence, both charges largely came down to credibility determinations between Soapes and his accusers. Soapes testified regarding both charges at trial. He asserted his encounter with S.B. was consensual and denied any sexual activity with C. The jury believed both S.B. and C. over Soapes. In a situation such as this, where Soapes did not object or move to sever the (properly) joined charges, we find it unnecessary to review his newfound joinder claim under the plain error doctrine because failing to review this claim will not result in a manifest miscarriage of justice, prejudicially undermine the fundamental fairness of the proceeding, or compromise the integrity of the judicial process. *Miller*, ¶ 10.

¶27    *3. Whether Soapes received ineffective assistance of counsel*.

¶28    Having failed to convince us his convictions should be reversed pursuant to the plain error doctrine, the final issue on appeal concerns Soapes's claim he received ineffective assistance of counsel when his trial counsel did not seek to have Undersheriff Bofto struck as a juror or object to the joinder of offenses.

¶29    "Article II, Section 24 of the Montana Constitution and the Sixth Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, guarantee a defendant the right to effective assistance of counsel." *State v. Santoro*, 2019 MT 192, ¶ 14, 397 Mont. 19, 446 P.3d 1141 (*Santoro I*) (citing *State v. Kougl*, 2004 MT 243, ¶ 11, 323 Mont. 6, 97 P.3d 1095). In assessing ineffective assistance of counsel claims, we apply the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Kougl*, ¶ 11. Under the *Strickland* test, the defendant must (1) demonstrate that "counsel's    performance    was    deficient    or    fell    below    an    objective    standard    of

15

reasonableness" and (2) "establish prejudice by demonstrating that there was a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different." *Kougl*, ¶ 11 (quoting *State v. Turnsplenty*, 2003 MT 159, ¶ 14, 316 Mont. 275, 70 P.3d 1234). "To constitute ineffective assistance, counsel's conduct must flow from ignorance or neglect rather than from strategic decisions and trial tactics." *State v. McCaulou*, 2022 MT 197, ¶ 29, 410 Mont. 291, 518 P.3d 862 (citations omitted).

¶30     "When a defendant raises ineffective assistance of counsel claims on direct appeal, we must first determine whether the claims are more appropriately addressed in a postconviction relief proceeding." *State v. Secrease*, 2021 MT 212, ¶ 14, 405 Mont. 229, 493 P.3d 335 (citing *State v. Rodriguez*, 2021 MT 65, ¶ 31, 403 Mont. 360, 483 P.3d 1080). "IAC claims may be brought on direct appeal when the record sufficiently answers why counsel did or did not take a particular action. If it is not apparent from the record why counsel took a particular course of action, IAC claims may be more appropriate for review in a petition for postconviction relief." *Ward*, ¶ 18 (internal citations omitted). "Ineffective assistance of counsel claims are appropriate for review on direct appeal when 'no plausible justification' exists for the actions or omissions of defense counsel." *Secrease*, ¶ 14 (quoting *Kougl*, ¶ 15). "Claims involving alleged omissions of trial counsel are often ill-suited for consideration on direct appeal." *State v. Hinshaw,* 2018 MT 49, ¶ 21, 390 Mont. 372, 414 P.3d 271 (citing *State v. Briscoe*, 2012 MT 152, ¶ 10, 365 Mont. 383, 282 P.3d 657).

¶31   Soapes's IAC claim is not well-suited for consideration on direct appeal as the record does not sufficiently answer why trial counsel did or did not take particular actions in this case. *Ward*, ¶ 18. When an IAC "claim is based on matters outside the record—such as trial strategy—we will refuse to address the issue on appeal and allow the defendant to file a postconviction proceeding so that a record as to 'why' counsel acted as alleged may be developed." *McCaulou*, ¶ 29 (citing *Kougl*, ¶ 14). Soapes's trial counsel did not object to the joinder of offenses (or move to sever the charges) and affirmatively argued in favor of keeping Undersheriff Bofto on the jury. While on appeal Soapes now claims there is "no plausible justification" for either decision, the record seems to reflect that trial counsel was making strategic choices. Exactly "why" trial counsel made those decisions is a matter outside of the record on direct appeal and must be developed by Soapes in a postconviction proceeding, should he choose to file one. If Soapes does choose to file for postconviction relief, we determine he should be appointed counsel "in the interests of justice." *See* § 46-21-201(2), MCA.

## CONCLUSION

¶32   We decline to exercise plain error review regarding Soapes's claims about the non-exclusion of Undersheriff Bofto and the joinder of offenses. In addition, his ineffective assistance of counsel claim is not appropriate for consideration on direct appeal. Should Soapes wish to pursue his claims via postconviction relief proceedings, he should be appointed counsel.

¶33   Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ KATHERINE M. BIDEGARAY